Clarence C. TROTTER,
Plaintiff-Appellant,

v.

Paul J. KLINCAR, Individually and as Acting Chairman of the Prison Review Board, et al., Defendants-Appellees.

No. 83–2168.

United States Court of Appeals,
Seventh Circuit.

Argued May 24, 1984.

Decided Nov. 27, 1984.

1178

Darryl M. Bradford, Jenner & Block, Chicago, Ill., for plaintiff-appellant.

Imelda Terrazino, Asst. Atty. Gen., Chicago, Ill., for defendants-appellees.

Before PELL and ESCHBACH, Circuit Judges, and WYATT, Senior District Judge.*

ESCHBACH, Circuit Judge.

Appellant Trotter contests the district court's grant of the defendants' summary-judgment motion in this § 1983 action and asserts that the court below erred in its disposition of both his individual and class claims. For the reasons stated below, we affirm.

**I**

After serving a sentence in the Illinois prison system for a burglary conviction, Clarence C. Trotter was released on parole[1] in April 1981 under the authority of the Illinois Prisoner Review Board ("Board"). On May 27, 1982, Trotter was arrested on theft and burglary charges. Bail was set at $12,000 on May 28. On that same day, however, a parole-violation warrant was served on Trotter and a "parole hold" went into effect, which prevented the accused from posting bond and obtaining release from custody.

Trotter, as a parolee charged with violating the conditions of his parole, was entitled to a preliminary parole-revocation hearing ("preliminary hearing") to determine whether there was probable cause "to hold the [parolee] for a revocation hearing." Ill.Rev.Stat. ch. 38, ¶ 1003-3-9(c). Trotter received a copy of the parole-violation charges on August 9, 1982 and he was informed that a preliminary hearing was scheduled for August 16, 1982. In order to arrange for his legal counsel to be present, Trotter requested and received a continuance until August 27, 1982. Prior to that date, the hearing officer, defendant Sharon Everett, informed Trotter's counsel that her determination of probable cause would be based on the written report of Deputy Thedos, Officer Alessia, and Officer Lesko. Trotter's counsel then requested that Thedos, Alessia, and Lesko be present at the hearing, so that they could be questioned in Trotter's presence. Because it could not produce these witnesses by August 27, the Board rescheduled the hearing for September 15, 1982.[2]

---

* The Honorable Inzer B. Wyatt, Senior District Judge for the Southern District of New York, sitting by designation.

1. The record does not so indicate, but counsel for Trotter has informed this court, Appellant's Brief at 3 n. 1, that Trotter was released subject to the "mandatory supervised release" provision of Ill.Rev.Stat. ch. 38, ¶ 1005-8-1(d). Under *id.* ¶ 1003-3-9, the procedures for revocation of mandatory supervised release, for the purposes of this appeal, do not differ from those for revocation of parole. In the interest of brevity, we will refer to "mandatory supervised release" as "parole," to the revocation process as "parole revocation," and to Trotter as the "parolee."

2. In regard to Trotter's arrest on May 27, 1982, while he was on parole, for the alleged commission of the burglary offense, we note that prior to his preliminary parole-revocation hearing of September 15, 1982, Judge Moran of the Cook County Circuit Court, Municipal Department, conducted a hearing on June 3, 1982 and found the necessary probable cause to hold Trotter to answer for the alleged burglary that precipitated the parole-revocation warrant. Trotter has not in this appeal challenged the sufficiency of the hearing of June 3. Although it would not necessarily fulfill all the requirements of Illinois statutory law relating to preliminary parole-revocation hearings, the hearing before Judge Moran was significant in the context of federal due-process rights, because it provided almost the identical probable-cause showing that would be required at any subsequent preliminary parole-revocation hearing. *See Morrissey v. Brewer,* 408 U.S. 471, 485, 92 S.Ct. 2593, 2602, 33 L.Ed.2d 484 (1972) (due process requires preliminary hearing "to determine whether there is probable cause or reasonable ground to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions"). In addition, this unique combination of circumstances casts serious doubt on Trot-

Trotter had retained two attorneys, Ms. Rhodes and Mr. Wedoff, to represent him at the preliminary hearing. However, on the day of the hearing, Ms. Everett informed Trotter's counsel that only Ms. Rhodes could be present at the proceeding. Mr. Wedoff telephoned the Executive Secretary of the Board, defendant Kaufmann, to protest the exclusion; Mr. Kaufmann, however, refused to overturn Ms. Everett's decision.

Trotter's counsel sought to make a tape recording of the proceedings; Ms. Everett, however, would not allow the device to be brought into the hearing room. Mr. Wedoff also protested this action to Mr. Kaufmann prior to the hearing, but the latter again refused to overrule Ms. Everett's decision.

The following individuals were present at the hearing: Mr. Nigro of the state's attorney's office, Ms. Everett, defendant Guthrie (a hearing officer for the Illinois Department of Corrections), Deputy Thedos, Officer Alessia, Officer Lesko, Trotter, and Ms. Rhodes. After calling the meeting to order, Ms. Everett read from the arrest report and asked the three witnesses whether the report was accurate. Each witness stated that the report was true and that Trotter was the person to whom the report referred. Trotter's counsel then endeavored to cross-examine. Mr. Nigro, however, objected to the initial question and Ms. Everett sustained the objection. She then stated that she had found the requisite probable cause and that she was closing the hearing. After a colloquy regarding the right of the parolee to question the witnesses, Ms. Everett allowed Trotter's counsel to ask Thedos, Alessia, and Lesko whether they would be willing to answer any further questions. After they had indicated that they would not, Ms. Everett stated once again that, on the basis of the written report and the testimony of the witnesses, she had found the necessary probable cause. Trotter's counsel again

objected to the limitation on cross-examination. At that point the hearing was terminated.

Ms. Everett prepared a summary of the proceedings, which stated that the finding of probable cause was based on the written report and the testimony of Thedos, Alessia, and Lesko. Trotter was given a copy of this summary.

The defendants, after receiving a letter from Trotter's counsel protesting the manner in which the preliminary hearing was conducted, scheduled another hearing for November 9, 1982. It was subsequently rescheduled for November 12, so that Thedos, Alessia, and Lesko could be present. On November 10, however, Trotter's counsel was informed that the hearing had been cancelled; a second preliminary hearing never took place. Defendants Scillia and Thomas, officials of the Department of Corrections, conferred with the defendant members of the Board in making the determination that a second proceeding would not be held.

Trotter initiated this § 1983 action in federal district court on November 18, 1982. The complaint, referring to the Supreme Court's decision in *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) and the Board's regulations, alleged that (1) Trotter had been improperly denied a prompt preliminary hearing, (2) his counsel had been arbitrarily barred from the hearing, (3) Trotter had been improperly denied the right to record the proceedings, and (4) cross-examination of the government's witnesses had been improperly denied. Trotter sought (1) compensatory and punitive damages for the alleged violation of his own constitutional rights and (2) injunctive and declaratory relief for himself and all other similarly situated parolees.

On January 27, 1983, Trotter was convicted of the burglary charges that had been the basis for the parole-violation war-

---

ter's qualifications under Rule 23 of the Federal Rules of Civil Procedure to act as a class representative for the class described in his complaint, but whose certification he never sought.

However, in view of our disposition of this appeal, we have not reached either of these questions.

rant. He was given an eight-year sentence, to be served concurrently with the remainder of his sentence from the previous burglary conviction. A final parole-revocation hearing was held on February 15, 1983.

In an order dated May 26, 1983, the district court, ruling on Trotter's motion for partial summary judgment as to his individual claims and on the defendants' motion to dismiss or, in the alternative, for summary judgment, entered judgment in favor of the defendants and against Trotter. *Trotter v. Klincar*, 566 F.Supp. 1059 (N.D.Ill. 1983). Relying on *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983), the court held that, because Trotter had been convicted and a final parole-revocation hearing had already been provided, Trotter's individual claims for declaratory and injunctive relief arising from the conduct of the preliminary hearing were moot. The court also found that Trotter was no longer a suitable class representative. Because no class had been certified, the court reasoned that the putative class members had not acquired a separate legal status that would sustain their claims after those of the named representative had expired and also rejected Trotter's argument that the class claims were "capable of repetition, yet evading review." The class claims were, therefore, dismissed. 566 F.Supp. at 1062–63.

The court did not find that Trotter's damage claims had expired. However, in reliance on the decision of this court in *United States ex rel. Powell v. Irving*, 684 F.2d 494 (7th Cir. 1982), the court held that defendants Klincar, Kaufmann, Ewers, Everett, and the Board were absolutely immune from damage claims under § 1983. As for the remaining defendants, the court concluded that the Illinois Department of Corrections was immune from damage claims under the Eleventh Amendment. It found, however, that the Amendment would not necessarily shield defendants Scillia and Thomas from personal liability under § 1983, but that these officials were nonetheless entitled to qualified good-faith immunity. It was not necessary to consider whether such immunity was appropriate, however, as the court determined that no violation of Trotter's constitutional rights had occurred at the preliminary hearing. In view of the disposition of the federal claims, the court, citing the Supreme Court's decision in *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), declined to exercise jurisdiction over the pendent state-law claims. This appeal followed.

## II

### A. Damage Claims

As noted above, the district court, relying on *Powell, supra*, held that the defendant officials who had been directly involved with the preliminary hearing were entitled to absolute, "quasi-judicial," immunity. Thus, defendants Klincar, Kaufmann, Ewers, Everett, and Guthrie could not be held liable for damages under § 1983. On appeal, Trotter argues that the court erred in relying on *Powell, supra*, and that these defendants can at best claim only qualified good-faith immunity for their actions.[3] We disagree.

■ Trotter first argues that the absolute immunity accorded in *Powell, supra*, extended only to activities associated with the Board's review of parole applications and that there is a substantial difference between that process and the one associated with the revocation of parole. We, however, agree with the district court's conclusion that "parole officials who decide parole applications are indistinguishable from parole officials who conduct preliminary and final parole revocation hearings." 566 F.Supp. at 1063. Indeed, this finding is fully supported by *Powell, supra*. Although that decision dealt with the Board's review of parole applications, the court

---

**3.** On appeal, Trotter does not contest the district court's decisions that (1) the Board and the Department of Corrections are immune from damage liability or (2) due to the adverse ruling on the federal claims, jurisdiction should not be exercised over the state-law claims.

adopted the analysis of the Ninth Circuit's decision in *Sellars v. Procunier*, 641 F.2d 1295 (9th Cir.), *cert. denied*, 454 U.S. 1102, 102 S.Ct. 678, 70 L.Ed.2d 644 (1981), which stated that "parole board officials perform functionally comparable tasks to judges when they decide to grant, deny or *revoke* parole." 641 F.2d at 1303 (emphasis added) (quoted with approval in *Powell, supra*, 684 F.2d at 496). The Ninth Circuit in fact has recently extended the reasoning of *Sellars, supra*, and held that a parole board is entitled to absolute immunity for activities related to the "execution of parole revocation procedures." *Anderson v. Boyd*, 714 F.2d 906, 909–10 (9th Cir.1983).

■ Trotter next argues that *Powell* reaches only the adjudicatory functions of the Board and that the actions he complains of relate solely to the administrative or ministerial functions of that agency. It is true that this circuit has extended absolute immunity to parole boards for their adjudicatory functions only.[4] However, we cannot agree that the actions that are the subject of this dispute are administrative or ministerial. As the Supreme Court recognized in *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), the grant of absolute immunity does not depend on the formal description of the official's activities, but rather on the nature of those activities. *Id.* 438 U.S. at 511–12, 98 S.Ct. at 2913. In light of *Butz, supra*, we

must consider whether the functions upon which the state officials would base their claim for immunity are "functionally comparable" to the activities of the judiciary. *See id.* at 513, 98 S.Ct. at 2914. These functions include not only the actual decision to revoke parole, but also the activities that are part and parcel of the decision process. *See Anderson, supra.* All the actions contested here are inexorably connected with the execution of parole revocation procedures and are analogous to judicial action relating to the conduct of trial proceedings and to rulings on motions of counsel. In addition, the safeguards against capricious and arbitrary action identified in *Powell, supra*, 684 F.2d at 497, in the context of parole-application decisions apply with equal force to parole-revocation decisions. Thus, we affirm the district court's determination that defendants Klincar, Kaufmann, Ewers, Everett, and Guthrie[5] are absolutely immune.

■ The district court was unwilling to extend absolute immunity to defendants Scillia and Thomas, who were responsible for the decision not to conduct a second preliminary hearing. We hold that these defendants are also entitled to absolute immunity, as we find that the decision not to provide another hearing was adjudicatory in nature. Specifically, the actions of these two officials are analogous to a denial of a motion for a new trial or for a

---

4. Although the Supreme Court has not addressed the question, *see Martinez v. California*, 444 U.S. 277, 285 n. 11, 100 S.Ct. 553, 559, n. 11, 62 L.Ed.2d 481 (1980), other circuits have accorded absolute immunity to the adjudicatory activities of parole boards. *See, e.g., Evans v. Dillahunty*, 711 F.2d 828 (8th Cir.1983); *Johnson v. Wells*, 566 F.2d 1016 (5th Cir.1978); *Douglas v. Muncy*, 570 F.2d 499 (4th Cir.1978). The Third Circuit in *Thompson v. Burke*, 556 F.2d 231 (3d Cir.1977), a pre-*Butz* decision, extended absolute immunity to the adjudicatory acts of parole board members, but drew a distinction, which is of no consequence in the instant case, between adjudicatory and administrative acts. *See Powell, supra*, 684 F.2d at 497 n.4 (discussion of *Thompson*).

Trotter has cited *Harris v. Powers*, 520 F.Supp. 111 (W.D.Wis.1981), which was decided prior to this court's decision in *Powell*, as authority for the proposition that quasi-judicial immunity

does not extend to the defendants' activities. In *Harris, supra*, the district court held that a decision concerning the site of a parole-revocation hearing was not adjudicatory in nature. While we note that the rationale of *Powell* casts doubt on the continued validity of the holding in *Harris*, we have no occasion to pass on the latter decision, as we find that the acts complained of in the instant case fall squarely within the sphere of activities to which absolute immunity extends.

5. Defendant Guthrie, who was present at the preliminary hearing, was an officer of the Department of Corrections. As we noted above, it is the function the official performs, not the title he holds, that determines whether he is entitled to immunity. We perceive no distinction between Guthrie's role at the hearing and that of the Board employees; accordingly, Guthrie is also entitled to absolute immunity.

rehearing. We conclude that the rationale of *Butz* and *Powell* applies with equal force to these activities and hold, therefore, that Thomas and Scillia are absolutely immune from damage liability.[6]

In conclusion, the damage claims arising from the conduct of the initial preliminary hearing and from the decision not to conduct a second preliminary hearing are barred due to the absolute, "quasi-judicial" immunity of the defendants.

## B. Class-Action Claims

In his complaint, Trotter sought declaratory and injunctive relief for himself and for "the class of all persons who are on parole under the authority of the [Board], against whom a parole violation warrant has been issued, and who have been denied or will be denied a preliminary parole revocation hearing as required by [*Morrissey, supra*]." Complaint ¶ 4. As noted above, the district court found that Trotter's individual claims for injunctive and declaratory relief were moot and concluded that, "since Trotter's personal claim for ... relief fail[ed] to present a case or controversy for the purposes of Article III, and since a class ha[d] not been certified, Trotter [was] an inappropriate class representative." 566 F.Supp. at 1063. Thus, the defendants' summary-judgment motion with reference to Trotter's individual and class claims for injunctive and declaratory relief was granted.

■ In this appeal, Trotter does not contest the finding that his individual claims for injunctive and declaratory relief are moot. He does, however, maintain that he is a suitable class representative and that this action should be remanded for further proceedings on the claims raised on behalf of the putative class.[7]

■ The general rule, of course, is that an actual "case" or "controversy" within the meaning of Article III must exist not only on the date the action is initiated, but at every stage of the trial and appellate proceedings. *See Roe v. Wade*, 410 U.S. 113, 125, 93 S.Ct. 705, 713, 35 L.Ed.2d 147 (1973). In the context of class actions, however, an exceptional doctrine has been developed that allows the named plaintiff whose individual claims are moot to continue to act as a class representative even though his own claims—and those of the class—cannot be characterized as "capable of repetition, yet evading review." *See United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 398 n. 6, 100 S.Ct. 1202, 1209 n. 6, 63 L.E.2d 479 (1980); *Franks v. Bowman Transp. Co.*, 424 U.S. 747, 753–55, 96 S.Ct. 1251, 1258–59, 47 L.Ed.2d 444 (1976). The Supreme Court has reasoned that, upon certification, the class obtains a legally cognizable interest independent of that of the named plaintiff. Using the fiction that the certification may "relate back" to the date of the original certification motion, the Court has concluded that the class claims preserve the adversarial interest needed for the invocation of jurisdiction. *See Sosna v. Iowa*, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975). This usually requires, however, that the named plaintiff's claims expire subsequent to the certification of the class. *Geraghty, supra*, 445 U.S. at 398, 100 S.Ct. at 1209. The Court has noted, however, that some claims may be so inherently transitory that the trial court cannot reasonably be expected to *rule* on the motion for certification

---

**6.** As explained in note 5, *supra*, with regard to defendant Guthrie, the fact that Scillia and Thomas were officers of the Department of Corrections does not alter the scope of their immunity under the facts of this case.

**7.** Trotter maintains that the interest in his damage claims, which have not expired, is sufficient to allow him to act as a class representative. We disagree. "[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *East Texas Motor Freight Sys., Inc. v.*

*Rodriguez*, 431 U.S. 395, 403, 97 S.Ct. 1891, 1896, 52 L.Ed.2d 453 (1977) (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 94 S.Ct. 2925, 2929, 41 L.Ed.2d 706 (1974)). Trotter seeks declaratory and injunctive relief, not compensatory damages, on behalf of the class, yet he is not within the class of individuals who may be entitled to equitable relief. Thus, his interest in the damage claims does not allow him to act as a class representative for a group seeking declaratory and injunctive relief.

before the expiration of the named plaintiff's claim; in this situation, the certification may relate back to the filing of the original complaint. *See id.* 445 U.S. at 399, 100 S.Ct.at 1210; *Gerstein v. Pugh,* 420 U.S. 103, 110 n.11, 95 S.Ct. 854, 861 n.11, 43 L.Ed.2d 54 (1975); *Sosna, supra,* 419 U.S. at 402 n.11, 95 S.Ct. at 559 n.11. The ostensible rationale for this exceptional doctrine is that the requirements of Article III cannot be interpreted so as to preclude full judicial review of challenged government action whose intrinsically fleeting duration would prevent any single plaintiff from remaining subject to that action for the time necessary to complete the litigation. Stated in another manner, it is preferable to have the plaintiff currently before the court act as a class representative, even if his individual claims have expired, than to have no plaintiff at all.

■ In these exceptional class actions, the issue of class certification was initially raised at the trial level. In the instant controversy, however, the court below found that "the issue of class certification [had] not been addressed by any of the parties." 566 F.Supp. at 1063. The parties have in no way disputed this finding.

In an effort to explain his failure to act, however, Trotter has made two arguments on appeal. First, he asserts that the transitory nature of his claim for injunctive and declaratory relief made it impossible for him to *move* successfully for class certification prior to the expiration of his claim. Second, Trotter claims that the defendants' dilatory responses to discovery requests prevented him from presenting a timely certification motion.

In view of the proceedings before the district court, however, it is unnecessary for us to consider these arguments, as we find that they were not presented below; it is axiomatic that issues of this kind cannot be raised for the first time on appeal. *See American Fletcher Mortgage Co. v. Bass,*

688 F.2d 513, 520 (7th Cir.1982); *Stern v. United States Gypsum, Inc.,* 547 F.2d 1329, 1333 (7th Cir.), *cert. denied,* 434 U.S. 975, 98 S.Ct. 533, 54 L.Ed.2d 467 (1977).[8]

■ Even if we were to consider the merits of these arguments, however, we would find them to be unavailing. First, the timing of the proceedings below belies the notion that Trotter's claims were so transitory that he could not even move for certification. This suit was initiated on November 18, 1982. Trotter was not convicted until 70 days later on January 27, 1983. His final parole-revocation hearing was held on February 15, 1983, which was 89 days after the filing of the complaint. The district court's summary judgment order was entered on May 27, 1983, a full 190 days after the commencement of this action. There is no question that Trotter had the burden of proving that his case was appropriate as a class action and that it met all the requirements of Rule 23 of the Federal Rules of Civil Procedure. *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130,* 657 F.2d 890, 895 (7th Cir.1981), *cert. denied,* 455 U.S. 1017, 102 S.Ct. 1710, 72 L.Ed.2d 134 (1982); *Valentino v. Howlett,* 528 F.2d 975, 978 (7th Cir.1976); *Cook County College Teachers Union v. Byrd,* 456 F.2d 882, 885 (7th Cir.), *cert. denied,* 409 U.S. 848, 93 S.Ct. 56, 34 L.Ed.2d 90 (1972). Trotter was obviously aware of the date of his criminal trial and that a conviction could moot his individual request for injunctive and declaratory relief. Nonetheless, at no time during the 70-day period between the filing of the complaint and the conviction did he make any request for certification. Trotter did file his own summary-judgment motion, but in his request for relief made no mention of the class claims.

■ Trotter's argument that 70 days did not provide him with sufficient time is substantially weakened by the fact that, in many circuits, local rules require

---

**8.** Of course, if our characterization of the proceedings below suffers because the record is incomplete, the plaintiff-appellant bears the responsibility for not assembling an adequate record for this court to review. *See In re UNR Industries, Inc.,* 736 F.2d 1136, 1138 n.3 (7th Cir.1984); *Casualty Indemnity Exchange v. Village of Crete,* 731 F.2d 457, 460 (7th Cir.1984).

that a motion for certification be made within 60 days after the filing of the complaint.[9] It is true that no 60-day limitation applied to the proceedings below and we are in no way suggesting that a motion must be made within that time period. However, it would be unusual indeed for this court to determine that a 70-day period was, as a matter of law, insufficient when, in other circuits, all litigants that seek to use the class-action procedure must as a matter of course submit a certification motion within 60 days. Quite to the contrary, we find that, under the facts of this case, Trotter had sufficient time to raise the certification issue and that Trotter was not reasonably diligent in pursuing certification.[10]

Trotter's second argument is that the defendants unduly frustrated his effort to obtain the information necessary to move for class certification. The record in no way supports the conclusion that the defendants acted in bad faith, especially in view of the wide scope of Trotter's requests.[11]

The judgment is AFFIRMED.

**9.** *See, e.g.,* Rule 4(c) of the Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York; Rule 8(c) of the Local Rules of the United States District Court for the Western District of New York; Rule 200–4(b)(3) of the Local Rules of the United States District Court for the District of Oregon; Rule 15(b) of the Local Rules for the United States District Court for the Middle District of Tennessee. *See also Cottone v. Blum,* 571 F.Supp. 437, 440–41 (W.D.N.Y. 1983) (class-action claims dismissed due to plaintiff's failure to move for certification within the 60-day period mandated by Local Rule 8(c)).

**10.** This finding, of course, serves as an independent basis for upholding the district court's refusal to allow Trotter to act as a class representative. *See East Texas Motor Freight Sys., Inc. v. Rodriguez,* 431 U.S. 395, 404–05, 97 S.Ct. 1891, 1897, 52 L.Ed.2d 453 (1977).

Trotter maintains that Rule 23 imposes an independent obligation on the court to determine on its own motion whether the case should proceed as a class action. Whether such an obligation exists is certainly an open question in this circuit and one that has not been addressed by the Supreme Court. *See East Texas, supra,* 431 U.S. at 405, 97 S.Ct. at 1897. In addition, it is clear that the district court in this case did consider the propriety of a class action and did not dismiss the class allegations summarily, but found that Trotter was not an appropriate representative because his own claims were moot. The expiration of the named plaintiff's claims ordinarily calls for a dismissal of the class action. *See Board of School Comm'rs v. Jacobs,* 420 U.S. 128, 129–30, 95 S.Ct. 848, 849–50, 43 L.Ed.2d 74 (1975). If the court has an obligation, it is responsible for refusing to allow, as well as allowing, the litigation to be maintained as a class action if the facts so

dictate. Furthermore, assuming that Rule 23(c)(1) does require that the court decide "as soon as practicable," it in no way suggests that the court must generate *sua sponte* the evidence and arguments necessary for certification. As noted above, the burden for certification falls on the party seeking certification and he cannot be heard to complain that the court has failed to act when he has given it nothing upon which to act. The class-action portion of Trotter's complaint contained only sketchy and conclusory allegations that merely tracked the language of Rule 23(a) and made no mention of the factors under Rule 23(b). Subsequent papers filed below were similarly unilluminating.

**11.** We also note that it is not at all obvious that Trotter needed to complete discovery. *Cf. Eggleston, supra,* 657 F.2d at 895–96. A certification motion does not call for a preliminary decision on the merits. *See id.* at 895. Trotter has never adequately explained what information he needed from the defendants and we find that much of the information requested was unnecessary for a certification motion. Furthermore, under Rule 23(c)(1), the district court could have conditioned its certification decision on the completion of discovery and could have later modified its initial ruling if those conditions had not been met or if the evidence subsequently adduced demonstrated that the court had erred in its initial ruling. At any rate, we perceive no justification on this record for Trotter's failure to make some attempt to seek certification in the 70 days that elapsed between the initiation of this litigation and his subsequent conviction, much less for his failure to do so in the 190 days that elapsed between the filing of the complaint and the entry of the district court's summary-judgment order. Trotter's attempt to shift the blame to the defendants or to the district court is ultimately feckless.