Thomas R. LUNDBLADE, Plaintiff,

v.

Gayle M. FRANZEN, et al, Defendants.

No. 82 C 20190.

United States District Court,
N.D. Illinois, W.D.

March 19, 1986.

Thomas R. Lundblade, pro se.

Mary Gorman, O'Brien, Healy, Wade, Gorman, Rockford, Ill., for plaintiff.

Theresa M. McGrew, Office of the Atty. Gen., Chicago, Ill., for defendants.

## ORDER

ROSZKOWSKI, District Judge.

Before the court are cross motions for summary judgment. For the reasons stated herein, defendant's motion is granted; plaintiff's action is dismissed in its entirety.

## BACKGROUND

The parties agree that the material facts underlying this case are not disputed; merely the legal import of those facts remains to be resolved.

On March 26, 1973, plaintiff entered a plea of guilty on Information 72 CF 1809 ("72CF") to arson, a Class 2 felony in Illinois, and was sentenced to a 2–20 year term of imprisonment. *See* Ill.Rev.Stat. ch. 38, § 1005–8–1 (1973). Plaintiff remained in the custody of the Illinois Department of Corrections until October 2, 1975, at which time he was paroled. At the time of plaintiff's parole on 72 CF, the relevant Illinois' law provided that:

(e) Every indeterminate sentence shall include as though written therein a parole term in addition to the term of imprisonment. Subject to earlier termination under Sections 3–3–8, the parole term shall be as follows:

. . . . . .

(2) for a class 2 felony, ... 3 years; Ill.Rev.Stat. ch. 38, § 1005–8–1(e)(2) (1973). ("Section 1005").

On January 15, 1979, plaintiff was charged on Information 79 CF 125 ("79CF") with felony Deceptive Practice and on a pending misdemeanor. Plaintiff was released on a $3,500 recognizance bond and 10 percent of $1,000. When plaintiff failed to appear in court on the 79 CF charges on July 27, 1979, a bench warrant was issued for his arrest. Plaintiff was arrested on August 20, and confined in the Winnebago County Jail.

On August 24, a warrant was issued by the Illinois Department of Corrections stating that plaintiff appeared to be in violation of his 1975 parole on 72 CF. The Winnebago County Jail was ordered to hold plaintiff for delivery to the Department as a parole violator. This "Hold Order" prevented plaintiff from being released on bond for the 79 CF charges.

On September 6, 1979, the Department of Corrections sent plaintiff a document entitled "Notice of Charges of Alleged Parole or Mandatory Supervised Release Violations and Preliminary Hearing". This notice informed plaintiff that he had allegedly violated his parole on 72 CF by committing a new offense and by failing to submit monthly reports for December of 1978 and for January through July of 1979. Plaintiff waived his right to this preliminary hearing.

Plaintiff was convicted on the 79 CF charges on January 11, 1980, and sentenced to a term of 3 years incarceration; he was committed to the custody of the Department of Corrections on January 29.

Plaintiff appeared before the Prison Review Board one week later, on February 6, 1980, for a parole hearing. Due to his conviction on the 79 CF charges, plaintiff was found to have violated his 72 CF parole as of November 2, 1978. The Board therefore denied plaintiff parole.

From April through July of 1980, plaintiff corresponded with the Board and the Department of Corrections concerning his

belief that he had been improperly declared a parole violator. The thrust of plaintiff's argument was that under the clear language of Section 1005, his 3 year term of parole on 72 CF commenced on October 2, 1975, the day that he was released from prison. He therefore successfully completed his parole on October 2, 1978, approximately one month before the alleged parole violation occurred.

On May 1, 1982, plaintiff received a response from W.V. Kaufman, Jr., the Executive Director of the Prisoner Review Board. In his letter, Mr. Kaufman denied plaintiff's request for a rehearing stating simply that: "The Board finds the information submitted does not warrant a rehearing. There is a new sentence violation." On May 20, plaintiff received a response from defendant J. Volpe, Administrative Assistant of the Prisoner Review Board. In his letter Mr. Volpe stated:

Our records reflect a charge of arson (Indictment No. 180), a plea of guilty and a custody date of 6/16/72, with a sentence of 2-to-20 years. Although the law [section 1005] appears ambiguous, its intent is the term plus the parole period; in your case, the 20-year maximum plus a 3-year parole period, therefore negating your claim of completing a release period.

Plaintiff received a letter from defendant Gayle Franzen, Director of the Illinois Department of Corrections on August 22. In his letter, Mr. Franzen informed plaintiff that in the opinion of the Department of Corrections, not only had his parole on 72 CF not expired, his 2 to 20 year sentence on 72 CF was not due to expire until April 14, 1986.

On July 22, prior to receipt of Mr. Franzen's letter, plaintiff filed a "Pro-se Petition for Writ of Mandamus" with the Circuit Court of Winnebago County. Plaintiff's petition asserted his interpretation of Section 1005 and challenged the Board's finding that he was a parole violator. In

its motion opposing the writ, the State asserted that under his original sentence, plaintiff

"could have been held in prison [on CF 72] for 20 years, required then to serve 3 more years on parole, and then serve more time in prison (up to 3 additional years less time out on parole) if his parole was revoked; the decision of the Parole Board to grant him an earlier parole did not diminish the total sentence he had been given, and even though 3 years were successfuly served on parole, he remained liable to serve the balance of the 20 year sentence until the balance had been satisfied, i.e., for about another 18 years after the 3 years on parole had been served."

In short, the State felt it had the right to hold plaintiff on 72 CF since his original sentence allowed up to twenty years of custody and his early parole had not diminished his sentence.

On October 14 before the circuit could could act on his petition, plaintiff again appeared before the Prison Review Board. The Board denied plaintiff's parole request, again because he had been declared a parole violator on 72 CF.

Two days later, on October 16, 1980, the circuit court granted plaintiff's petition and issued an order directing the Board to vacate its February 6 decision declaring plaintiff a parole violator. The State filed a notice of appeal on October 29. On November 10, the State's motion to stay execution of the October 16 order was denied. A second notice of appeal was filed by the State on November 14. The State ultimately abandoned its appeal.

On December 3, the Board vacated the February 6 and October 14 orders and approved plaintiff for mandatory supervised release.[1] On December 19, plaintiff was released on parole from Logan Correctional Center. Plaintiff was officially discharged from parole on January 26, 1982, by order of the Board.

---

**1.** Under Section 1005, those sentenced prior to February 1, 1978, were subject to a statutory term of "parole". After that date, the term

"mandatory supervised release" was substituted for "parole". For simplification, this order will use the term "parole".

## DISCUSSION

Plaintiff brought the present action pursuant to 42 U.S.C. § 1983 alleging that the State's delay in discharging him from parole on 72 CF violated his due process, equal protection and eighth amendment rights. The State has moved for summary judgment alleging that the facts of this case fail to support a federal claim.

### 1. *Due process*

■ Plaintiff first alleges that by improperly continuing his parole on 72 CF past October 2, 1978, the State deprived him of liberty without due process of law. Section 1983 does not provide a cause of action for every wrongful or improper deprivation of liberty by a state. Only such deprivations which occur in the absence of adequate procedural protections state recognizable Section 1983 actions. *See Parratt v. Taylor*, 451 U.S. 527, 537, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981). It is thus necessary for this court to determine the adequacy of the procedural protections available to plaintiff. This task is greatly simplified by the Seventh Circuit's recent decision in *Toney El v. Franzen*, 777 F.2d 1224 (7th Cir.1985).

■ *Toney-El* involved a prisoner's suit brought pursuant to Section 1983 challenging an erroneous calculation of his custody and release dates. Like plaintiff in this case, the plaintiff in *Toney-El* "challenged the mistakes made by the state employees rather than the state procedures by which those mistakes were made." 777 F.2d at 1227. In such a case,

> *Parratt* requires a court " 'to consider the adequacy and availability of remedies under state law before concluding that a deprivation of life, liberty, or property violates due process of law' .... " The fundamental requirement of due process is a meaningful hearing at a meaningful time.

*Id.* (citation omitted). Dismissing the plaintiff-prisoner's due process claims, the Seventh Circuit pointed out that:

> In the instant action, Toney-El could have informally informed prison officials about the error in calculating his release date through correspondence. Toney-El also had the right to seek a writ of mandamus from the state court to correct the error. *See* Ill.Stat.Ann. ch 110, § 14–101 to –109 (Smith-Hurd 1984). Finally, Toney-El had a cause of action in the Illinois Courts for false imprisonment. ... Because Illinois law and the informal procedures of the Department of Corrections provided Toney-El with remedies that were both adequate and available Toney-El has failed to allege a violation of the Due Process Clause of the fourteenth amendment....

*Id.* at 1228. (citations and footnote omitted).

The Seventh Circuit has thus specifically determined that the procedural safeguards provided by Illinois for review of wrongful prisoner custody disputes satisfy due process. While *Toney-El* involved calculation of a projected release date from prison, this court can see nothing of substance to distinguish it from the calculation of the release date from parole involved in the present case. If anything, the liberty deprivation associated with a wrongful prison detention normally exceeds that associated with a wrongful parole retention. In either case, *Toney-El* does not turn on the severity of the alleged deprivation, but rather on the procedural protections provided.

In this case, plaintiff utilized the prison correspondence and writ of mandamus avenues of relief mentioned in *Toney-El*. In addition, plaintiff was afforded a preliminary hearing as to his parole violator status following his transfer from Winnebago County jail. Plaintiff waived his right to this hearing. Illinois law also provides plaintiff with a remedy for false imprisonment. As in *Toney-El*, then, the state provides plaintiff with sufficient procedural protections and his Section 1983 due process claim must be dismissed.

This conclusion is not altered by plaintiff's claims that the State violated the circuit court's writ of mandamus by keep-

ing him in custody [2] on 72 CF following his release from prison in December of 1980 until he has finally discharged in January of 1982. As the State points out, this "custody" was based on plaintiff's conviction in 79 CF. This court has been given no reason to doubt the accuracy of this assertion; Section 1005 authorizes a one year period of parole for plaintiff's 79 CF conviction and plaintiff's discharge in 1982 corresponds with the date scheduled for parole discharge on his 79 CF conviction. In any case, even if this "custody" somehow related to 72 CF, plaintiff was in no way precluded from contesting it in the Illinois courts.

Plaintiff's allegations sound solely of procedural due process violations. For completeness, however, it must be noted that *Toney-El* also forecloses any claim of a substantive due process violation in cases such as this.

> The Bill of Rights does not specifically guarantee [prisoners] the right to an early release from prison, nor does [this] alleged substantive right fall within one of the penumbras formed by the emanations from the specific guarantees in the Bill of Rights. [Prisoners] simply [have] no substantive due process right to an early release from prison.

*Toney-El*, 777 F.2d at 1227. Again, any difference between the erroneous calculation of a release date from prison and the erroneous calculation of a release date from parole is at best one of form rather than substance. Plaintiff's due process claims are thus properly dismissed.

### 2. *Cruel and Unusual Punishment*

■ As an alternative to his due process claim, plaintiff asserts that by subjecting him to excessive custody the State violated the eighth amendment's proscription against cruel and unusual punishment. While cases of this sort are extremely rare, excessive custody has been held under the proper circumstances to violate the eighth amendment. In its recent affirmance of a

district court decision finding liability for excess confinement, an *en banc* Ninth Circuit unanimously stated:

> Detention of [plaintiff] beyond the termination of his sentence was undoubtedly punishment within the constitutional meaning of that term. To be cruel and unusual, punishment must be incompatible with "the evolving standards of decency that mark the progress of a maturing society," or must involve unnecesary or wanton pain disproportionate to the severity of the crime. Detention beyond the termination of a sentence could constitute cruel and unusual punishment if it is the result of "deliberate indifference" to the prisoner's liberty interest; otherwise such detention can be held to be unconstitutional only if it violates due process.

*Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir.1985) (*en banc*) (citations omitted). Cf. *Benson v. Cady*, 761 F.2d 335, 339 (7th Cir.1985) (eighth amendment violation requires a finding of actual intent or "reckless disregard", defined as "highly unreasonable conduct or a gross departure from ordinary care"). Thus, an eighth amendment violation requires a finding of some degree of individual culpability; mere negligent conduct will not suffice. *Haygood*, 769 F.2d at 1354; *Benson*, 761 F.2d at 339.

■ The vast majority of time that plaintiff was improperly in "custody" in this case was spent either out of prison or in prison on another conviction. From October 2, 1978, the date plaintiff should have been released from parole, until August 20, 1979, the date plaintiff was arrested on 79 CF, he was out of jail, made no parole reports, and the State imposed no restrictions on his movement. Thus, during this time, plaintiff was in an extremely *de minimis* state of technical custody. From August 20 through 24, plaintiff was confined pursuant to a bench warrant issued for his failure to appear in court on 79 CF. From January 29 through December 19 of 1980,

---

**2.** Parole is clearly a form of "custody". *People ex rel. Johnson v. Pate*, 47 Ill.2d 172, 265 N.E.2d 144, 146 (1970).

plaintiff was incarcerated based on his felony conviction in 79 CF. Based solely on his 79 CF conviction, plaintiff could have been imprisoned until January 26, 1981, at which time he was scheduled for parole.[3] Additionally, Section 1005 provided that plaintiff was to remain on parole for one year. The end of this one year period corresponds with plaintiff's discharge on January 26, 1982.

Obviously plaintiff cannot allege an eighth amendment excessive custody violation for the time periods during which he was properly in custody pursuant to his conviction on 79 CF, whether in jail or on parole. Also, any improper technical custody that plaintiff may have been subjected to between October 2, 1978, and his arrest on August 20, 1979, cannot form the basis of an eighth amendment claim. It is at least questionable whether this mere technical "custody" amounted to "punishment" in the constitutional sense of that term: plaintiff was not in jail, submitted no reports and has shown no way in which his activities were restricted. Indeed, plaintiff was only in "custody", if at all, during this period based on an erroneous, *retroactive* determination by the Department of Corrections following his arrest on another felony. Even if "punishment", this type of excess custody hardly seems "cruel and unusual".

The only way that plaintiff even arguably states an eighth amendment excessive custody claim is for the period the Hold Order prevented him from being released on bail following his arrest on 79 CF and for the period following his parole denials based on his erroneous classification as a parole violator. Nothing about the State's conduct during those periods, however, implies the "deliberate indifference" requisite to an eighth amendment claim.

Following issuance of the Hold Order, the State provided plaintiff with a preliminary hearing on the correctness of its initial determination that plaintiff had violated parole on 72 CF. Plaintiff waived his right to this hearing and did not contest his parole violator status. In fact, plaintiff's first challenge to the finding that he had violated parole on 72 CF did not come until his denial of parole on February 6, 1980, following his conviction on 79 CF. Thus, if the record indicates that anyone was "indifferent" to plaintiff's excess confinement during the Hold Order period, it would be plaintiff rather than the State.

Once plaintiff finally began to contest his parole violator status, he quickly learned that the State disagreed with his position and considered him subject to the maximum twenty year sentence originally imposed on 72 CF. This is not a situation such as that in *Haywood* where the defendants were put on notice and then simply refused to investigate. *See* 769 F.2d at 1355. The State investigated plaintiff's claim and informed him that it disagreed with his interpretation of the relevant statute. The fact that the State's position was ultimately shown to be mistaken does not alone indicate the culpability necessary for an eighth amendment violation. In fact, while the circuit judge agreed with plaintiff's interpretation of Section 1005, following arguments on plaintiff's petition the judge stated: "I think the statute is about as unconstitutional as anything I have ever seen...." Thus, plaintiff's position was not so strong and the State's so untenable as to indicate "deliberate indifference" to plaintiff's plight. In any case, plaintiff's conviction on 79 CF carried with it a term of imprisonment of "not less than 1 year and not more than 3 years." Ill.Rev.Stat. ch 38, § 1005–8–1(a)(7). His release on December 19, 1980, fell with the one year minimum for his 79 CF conviction.[4]

---

**3.** As the State points out, the circuit court order granting plaintiff's writ of mandamus did not order his release from prison. It merely ordered that the Board's finding that plaintiff was a parole violator on 72 CF be vacated. Even following the circuit court's order, plaintiff was properly confined on 79 CF.

**4.** Contrary to plaintiff's assertion, nothing in the circuit court's grant of the writ of mandamus suggested he be released from prison. The writ concerned his status as a violator on 72 CF and in no way implicated his proper custody on 79 CF.

Having failed to raise even an inference of "cruel and unusual punishment" in this case, plaintiff's eighth amendment claim is dismissed.

### 3. *Equal Protection*

■ Plaintiff alleges that defendants actions in this case violated his fourteenth amendment right to equal protection. The Equal Protection Clause does not guarantee absolute equality or precisely equal advantages. *French v. Heyne*, 547 F.2d 994, 997 (7th Cir.1976) citing *Ross v. Moffitt*, 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974). Equal protection will have been violated in a constitutional sense where a plaintiff is able to show intentional or purposeful discrimination in the administration of a state classification. *See Snowden v. Hughes*, 321 U.S. 1, 8, 64 S.Ct. 397, 401, 88 L.Ed. 497 (1944); *Bloomenthal v. Lavelle*, 614 F.2d 1139, 1141 (7th Cir.1980). In other words, the state must be shown to have purposefully discriminated against those entitled to be treated in the same manner as others similarly situated. *See Snowden; Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir.1984); *McCalvin v. Fairman*, 603 F.Supp. 342, 346 (N.D.Ill.1985).

■ Nothing in the facts of this case indicates an equal protection violation. Though plaintiff was incarcerated pursuant to a Hold Order pending his conviction on 79 CF, nothing indicates that other alleged parole violators were treated dissimilarly. Also, while plaintiff many have been denied work release, transfer and other prison privileges during his incarceration on 79 CF, nothing indicates that other alleged parole violators were not. In addition, the records indicate that these denials were based at least in part on other considerations. Finally, while plaintiff may have been denied an early parole on 79 CF, there is no indication that other alleged parole violators were treated any differently. The fact remains that during his incarcera-

tion, the State thought that plaintiff had violated his parole on 72 CF. The mere fact that this belief ultimately was shown to be mistaken by a state court decision does not indicate purposeful discrimination and dissimilar treatment on the State's part. Recognizing this, plaintiff has made no argument for purposeful discrimination in his briefs and appears to have abandoned his equal protection claim.

### 4. *Immunity*

■ Even assuming plaintiff has stated a viable Section 1983 claim in this case, the defendants are all immune from suit. The Seventh Circuit has held that "the Illinois Prisoner Review Board is functionally comparable to the judiciary and ... therefore its members are entitled to absolute immunity for their official actions." *Walker v. Prisoner Review Board*, 769 F.2d 396, 398 (7th Cir.1985) citing *Trotter v. Klincar*, 748 F.2d 1177, 1182 (7th Cir.1984) and *United States ex rel Powell v. Irving*, 684 F.2d 494, 496 (7th Cir.1982).[5] This absolute immunity has been extended to actions related to parole revocation (*Trotter*) as well as actions related to the denial of parole (*Powell*). The mere fact that some of the instant defendants are employed by the Illinois Department of Corrections rather than the Prisoner Review Board is of no import because "it is the function the official performs, not the title he holds, that determines whether he is entitled to immunity". *Trotter*, 748 F.2d at 1182 n. 5. *See Id.* at 1883 & n. 6 (Illinois Department of Corrections officials entitled to absolute immunity for their role in parole revocation.) It is the quasi-judicial nature of parole decisions which provides for absolute immunity.

As in *Trotter*, all the decisions regarding plaintiff's parole violation were adjudicatory in nature: he was provided a hearing after the Hold Order issued (a hearing which he declined) and he was subsequently provided with two further hearings in

---

5. While not deciding the issue, the Supreme Court has recently indicated that "state parole officials enjoy absolute immunity as a matter of federal law....". *Cleavinger v. Saxner*, — U.S. —, 106 S.Ct. 496, 500–01, 88 L.Ed.2d 507 (1985) (citing cases). *See Id.* 106 S.Ct. at 500–02.

front of the Board. The results of plaintiff's correspondence with Board members and Department of Correction officials following the February 6, 1980, Board hearing were "analoguous to a denial for a new trial or for a rehearing." *Trotter*, 748 F.2d at 1182–82. Thus, absolute, rather than qualified, immunity is the proper standard for the defendants in this case and plaintiff's claims are barred.

## CONCLUSION

For the reasons stated herein, plaintiff's cause of action is dismissed.