Kenneth COPELAND, Plaintiff,

v.

Odie WASHINGTON, et al., Defendants.

No. 95 C 1179.

United States District Court,
N.D. Illinois,
Eastern Division.

Aug. 1, 1995.

the privilege has the burden of establishing all of

Thomas Peters, Belleville, IL, for plaintiff.

Patrick M. Blanchard, Asst. State's Atty. and Jonathan C. Clark, Asst. Atty. Gen., Chicago, IL, for defendants.

*MEMORANDUM OPINION
AND ORDER*

SHADUR, Senior District Judge.

Kenneth Copeland ("Copeland") has filed a putative class action on his own behalf and on behalf of other persons who have been or will be subjected to the same claimed infringement of their constitutional liberty interests by practices of the Illinois Department of Corrections ("Department") and Sheriff of Cook County Michael Sheahan ("Sheahan") that affect individuals who receive felony con-

its essential elements." *Id.*

victions and sentences while they are being held "temporarily" at the Cook County Department of Corrections ("County Jail"). "Temporarily" can be a euphemism for protracted stays at the County Jail—sometimes so protracted that a convicted criminal defendant can receive a sentence calling for less custodial time than the period that he or she has already spent in the County Jail awaiting trial (such a defendant thus being entitled to immediate release under state law).

That fate was allegedly suffered by Copeland: According to the Complaint,[1] when he received a felony conviction and sentence of four years on February 22, 1995 he had already spent 25 months in the County Jail. Under Illinois' system of mandatory day-for-day good time credits (730 ILCS 5/3–6–3(2)), Copeland's required time in custody was only 24 months (one-half of the four-year sentence). Accordingly he was entitled to be released on parole the minute that sentence was pronounced.

Unfortunately the policies that have been established by Department and Sheahan operated to defeat that entitlement. Those policies require Copeland (and all criminal defendants like him) to be processed at one of Department's institutions, Joliet Correctional Center ("Joliet"), before they can be released to parole supervision. And because of the logistics for transfer of prisoners from the County Jail to Joliet, it was not until February 24, 1995 that Copeland was transferred to Joliet for such processing and his subsequent release. This class action was filed after Copeland was sentenced and before he was transferred—on February 23.

Sheahan and Department's Director Odie Washington ("Washington")[2] have objected to Copeland's motion for class certification on two grounds:

1. the claimed absence of an Article III case or controversy; and

2. the lack of "numerosity," one of the required elements under Fed.R.Civ.P.

("Rule") 23(a)—more specifically Rule 23(a)(1).

No objection has been interposed by defendants to the other Rule 23(a) elements, colloquially referred to as "commonality" (Rule 23(a)(2)), "typicality" (Rule 23(a)(3)) and adequacy of representation (Rule 23(a)(4)). Nor has either defendant caviled at the applicability to this case of Rule 23(b)(2) (the ground that Copeland asserts as the basis for class action treatment of his prayers for declaratory and injunctive relief). More importantly for certification purposes than the absence of any stated objection on defendants' part, this Court's independent examination of Copeland's submission in support of his Motion To Certify Class confirms that those Rule 23(a) and 23(b)(2) conditions are more than amply satisfied. Accordingly this opinion will focus only on defendants' two stated objections.

*Case or Controversy*

Both defendants have missed the critical difference between this action and the case that is principally relied on in Sheahan's opposition memorandum, *Holmes v. Fisher*, 854 F.2d 229 (7th Cir.1988).[3] There the vital deficiency in the named plaintiff's effort to obtain injunctive relief was the action's lack of vitality in equitable-relief terms at the time it was filed. Writing for the Court of Appeals, Judge Easterbrook characterized the matter in this way (854 F.2d at 232, emphasis in original):

> This case was dead on arrival, moot the day the complaint was filed. So far as equitable relief was concerned, there was *never* a case or controversy within the meaning of Art. III of the Constitution.

But here Copeland's action was very much alive when it was filed—on his allegations, on February 23, 1995 he was entitled to release but was being unlawfully (more to the point, unconstitutionally) being held in custody. That critical distinction triggers the operation not of *Holmes* but of the contrasting doctrine of *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 403–04, 100 S.Ct.

---

**1.** No challenge has been suggested to the factual allegations set out in the text.

**2.** Sheahan and Washington are the two named defendants in this action.

**3.** Sheahan and Washington have also cited other case law authorities, but none of them stands in the path of the Supreme Court decisions that this opinion finds clearly controlling.

1202, 1212–13, 63 L.Ed.2d 479 (1980)—a case that *Holmes,* 854 F.2d at 232 accurately described as "holding that a case live when filed retains sufficient vitality to permit a district court to decide whether there is a proper class, and, if there is, to adjudicate the case on behalf of the members of the class with live claims." Indeed, it is not necessary to go any farther than to quote the explanation of that doctrine and of the relevant case law in Sheahan's own Mem. 5:

> In certain inherently transitory clams [sic], the Supreme Court has recognized that the district court cannot reasonably be expected to rule on a motion for class certification before the expiration of the representative's claim. *See Sosna v. Iowa,* 419 U.S. 393 [95 S.Ct. 553, 42 L.Ed.2d 532] (1975); *Geraghty,* 445 U.S. at 403–404 [100 S.Ct. at 1212–13]; *Trotter v. Klincar,* 748 F.2d 1177, 1183–84 (7th Cir.1984). In such cases the Court has created an exception which relates class certification to the time of the filing of the complaint by holding "that a case live when filed will retain vitality to permit a district court to decide whether there is a proper class." *Holmes,* 854 F.2d at 232, *citing Geraghty,* 445 U.S. at 403 [100 S.Ct. at 1212].

■ Sheahan is of course wrong in arguing that Copeland should have sued *before* his transfer to Department (Sheahan Mem. 5–6), for any such action would have been premature—Copeland could then have suspected, but he could not know, that his liberty interest would be violated at that point (after all, defendants could have seen the error of their ways and released him instead of transferring him). In this instance the case or controversy really arose only when Copeland was actually transferred and, in equitable terms, would not have terminated until Copeland's later release.

Accordingly the Article III case or controversy was very much alive (not "dead on arrival") when Copeland filed this action. Hence *Sosna* and *Geraghty* apply directly (see also *Gerstein v. Pugh,* 420 U.S. 103, 110 n. 11, 95 S.Ct. 854, 861 n. 11, 43 L.Ed.2d 54 (1975)), while *Holmes* does not. Copeland is

also entirely right in relying on *County of Riverside v. McLaughlin,* 500 U.S. 44, 50–52, 111 S.Ct. 1661, 1666–6?, 114 L.Ed.2d 49 (1991), which post-*Holmes* distinguished the "chokehold" case (*City of Los Angeles v. Lyons,* 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)) on grounds that are equally applicable here. Indeed, the *County of Riverside* discussion in that respect might well have been written for this case. Hence defendants' first objection must be and is rejected.

### *"Numerosity"*

■ On the allegations of Copeland's Complaint (which again must be accepted for current purposes), this case presents the situation of a "fluid" class—one in which defendants' ongoing pursuit of the same practice that caused the violation of Copeland's constitutional rights (as is assumed for present purposes) continues to operate as to other inmates. Copeland's counsel has just taken the deposition of Department's transfer coordinator Diane Jockish and has represented that although the exact size of the class cannot be determined with precision, the strong inference from the number of people who pass through the system is that the number affected in the same manner as Copeland is large enough to satisfy the requirements of Rule 23(a)(1). This Court has no reason to doubt that representation, and accordingly it also rejects defendants' remaining objection to certification. Of course, if it later develops that the situation is otherwise than as it has been represented, decertification of the class is always available to defendants as a remedy.

### *Conclusion*

Both objections that have been interposed to class certification have been found wanting in this opinion. Accordingly Copeland's motion in that respect is granted, and this action will proceed as a class action on behalf of:

> Those persons who (a) have been convicted and sentenced in the Circuit Court of Cook County on or after February 23, 1993 [4], (b)

---

**4.** This assumes that the two-year limitations peri-

od for Illinois-based actions under 42 U.S.C.

had completely served their respective sentences (taking good time credits into account) on the respective dates that they were sentenced and (c) were nonetheless held in custody beyond their respective statutory release dates for the sole purpose of transporting them to the Joliet Correctional Center for processing by the Illinois Department of Corrections.

§ 1983 applies to the class members.