Stephanie A. PATTERSON, Plaintiff,

v.

Nicholas BRADY, Secretary, Dept. of Treasury, Defendant.

No. IP 88–1311–C.

United States District Court,
S.D. Indiana,
Indianapolis Division.

July 19, 1990.

Thomas R. Ruge, Ruge & Ruppert, Indianapolis, Ind., for plaintiff.

Sue Hendricks Bailey, Asst. U.S. Atty., Indianapolis, Ind., for defendant.

## ORDER ON RULE 4(j) MOTION TO DISMISS

McKINNEY, District Judge.

This Title VII and Privacy Act cause comes before the Court on the defendant's motion to dismiss for failure to effect service within 120 days of filing the complaint. For the reasons set forth below, the Court DENIES the motion to dismiss.

### I. *Facts:* [1]

Plaintiff Stephanie Patterson began full-time employment with the Internal Revenue Service in Indianapolis in 1982. During April of 1987 the position of Supervisory Appeals Aid became available at the local I.R.S. office, and Ms. Patterson applied for the job. However, she was not selected for the position as the job was filled by a white employee. Ms. Patterson, who is black, believes that she did not receive the position because she was discriminated against on account of her race.

After filing three administrative complaints with the Equal Employment Opportunity office, Ms. Patterson initiated this action on November 4, 1988, by filing a three-page Complaint with several attachments. The Complaint charged 12 different defendants with various acts of racial discrimination and violations of her privacy rights. Plaintiff filed the action without the assistance of legal counsel, and asked the Court to appoint counsel for her. On November 18, 1988, the Court ordered the Clerk to appoint counsel for Ms. Patterson.

During the filing of her *pro se* complaint on November 4, 1988, plaintiff was assisted by a representative of the Clerk's office charged with working with pro-se litigants. On the Civil Cover Sheet for Ms. Patterson's file, the representative checked the box marked "Federal Question—U.S. Government not a party." As a result, Ms. Patterson was not apprized that it was important to provide any "special" service to the local U.S. Attorney or the U.S. Attorney General.

Ms. Patterson then served summons and copies of the complaint upon 12 different defendants at their place of employment. Service was effected upon defendant Nicholas Brady, the proper defendant in this Title VII action under 42 U.S.C. § 2000e–16, on November 10, 1988. Upon receiving the return receipt of the service on Secretary Brady from the post office, Ms. Patterson delivered it to the Clerk's office. Ms. Patterson was never told by anyone at the Clerk's office that additional service was necessary.

Throughout the next four months after the filing of the Complaint, the defendants moved on four different occasions for an enlargement of time to respond to the action. The Court granted the motions and eventually gave the defendants, at their request, until March 5, 1989, to respond. On March 6, 1989, the 122nd day after the action was commenced, the defendants filed a motion to dismiss raising various defenses.

Among other things, the government argued that service of process against the Treasury Department was defective because the Attorney General and the local U.S. Attorney had not been served. The government also asserted that the individual defendants had not been properly served. The government did not raise the mandatory 120 day time limit of Rule 4(j) in its first motion to dismiss; the Rule 4(j)

---

**1.** The facts enumerated herein come from the affidavit of Stephanie Patterson that was filed on June 29, 1990, and the file in this action. Although the defendant had ample opportunity to submit evidence in support of his motion, no affidavits or other materials have been proffered by the defendant.

defense was not specifically raised until almost a year later in February of 1990.

Meanwhile, despite the Court's Order of November 18, 1988, ordering the Clerk to appoint counsel, no attorney was appointed for Ms. Patterson until February 28, 1989, some 116 days after the filing of the Complaint and 102 days after the Court's Order. The Clerk notified attorney Jeffrey Abbott of his appointment as plaintiff's counsel, but Abbott never filed an appearance. Ms. Patterson had two telephone conversations with Abbott, but the case was never really discussed in detail.

On March 20, 1989, attorney Abbott's appointment was rescinded pursuant to his request. Abbott made no filings on behalf of the plaintiff, and, in fact, indicated in his motion to withdraw that he was not well versed in federal practice and was withdrawing entirely from the active practice of law. On that same date attorney William Dazey was appointed in his place.

Dazey was plaintiff's appointed counsel for six months until his motion to withdraw was granted on September 22, 1989. For reasons that are unknown to the Court, Dazey did not respond to the motion to dismiss or otherwise make any filings on behalf of Ms. Patterson. Plaintiff would later request disciplinary action against Dazey.

On October 5, 1989, plaintiff asked for new counsel, and on November 22, 1989, Mr. Ruge entered his appearance on her behalf. On February 6, 1990, Mr. Ruge responded to the motions to dismiss, and on February 16, 1990, more than a year after plaintiff filed her original *pro se* complaint but only some 86 days after he entered his appearance, Mr. Ruge attempted to properly serve the Attorney General, the local U.S. Attorney, and the individual defendants. The return receipts indicate that the Attorney General and the local U.S. Attorney were served shortly thereafter.

On February 21, 1990, the government filed a second motion to dismiss, this time specifically raising the issue of the failure to effect service within 120 days of filing

the complaint as is required pursuant to Rule 4(j).

Throughout the 20 months that this case has been pending, Ms. Patterson has also filed numerous papers and motions on her own behalf. Some of these filings were made prior to any appointment of counsel, and some were made while counsel has been appointed. In fact, Ms. Patterson personally made more than 25 different filings that, together with accompanying documents, fill three legal files. Ms. Patterson is a high school graduate, attended Indiana University for three years, and is still employed at the local I.R.S. office.

Several weeks ago on June 22, 1990, the Court examined this case and ruled on many of the pending motions. After determining that Ms. Patterson's *"pro se"* filings should be stricken and that her *Bivens* claims against the individual defendants appear to be without legal basis, the Court addressed the Rule 4(j) service of process issue. The Court determined that there were compelling arguments on both sides of the issue, and set the matter down for oral argument. On July 3, 1990, the parties argued the Rule 4(j) motion to dismiss in open court, and the matter is now ready for resolution.

## II. *Discussion:*

■ Rule 4(j) mandates that if effective service is not obtained within 120 days of filing and the plaintiff cannot show good cause why such service was not made within that period, the action shall be dismissed without prejudice. Subsection (j) was added to Rule 4 in 1983 when Congress enacted broad changes to the method by which service is made. *See generally* 4A *Wright and Miller* § 1137. The case law on Rule 4(j) confirms that the Rule is mandatory and must be followed by the federal courts. *See, e.g., Floyd v. United States*, 900 F.2d 1045 (7th Cir.1990); *Wei v. State of Hawaii*, 763 F.2d 370 (9th Cir.1985); *Coleman v. Greyhound Lines, Inc.*, 100 F.R.D. 476 (N.D.Ill.1984); *Sanders v. Marshall*, 100 F.R.D. 480 (W.D.Pa.1984).[2] In this case,

---

2. The courts agree, however, that the Rule 4(j) defense can be waived pursuant to Rule 12(h).

*See, e.g., Pardazi v. Cullman Medical Center*, 896 F.2d 1313 (11th Cir.1990) (giving thorough dis-

more than 120 days passed after the filing of the complaint before service was effected, so Rule 4(j) initially mandates dismissal.

■ There is an exception to the rule, however, where "good cause" is shown why the defendants were not properly served within 120 days. The Rule does not define "good cause" or give examples of what might suffice, and the legislative history is of little help in that it only lists evasion of service as one example of good cause. *See* 1982 U.S.Code Cong. & Admin News 4434, 4446 n. 25. Nonetheless, several general principles are well established in this context.

■ For instance, it is clear that good cause determinations under Rule 4(j) "entail discretionary conclusions by the district court that will not be disturbed absent an abuse of discretion." *Floyd v. United States*, 900 F.2d 1045, 1046 (7th Cir.1990). Plaintiff bears the burden of showing good cause, *Geiger v. Allen*, 850 F.2d 330, 333 (7th Cir.1988); *Woods v. Partenreederei M.S. Yankee Clipper*, 112 F.R.D. 115, 116 (D.Mass.1986), and the failure to follow the

Federal Rules of Civil Procedure is ordinarily not good cause under the Rule. *Reynolds v. United States*, 782 F.2d 837, 838 (8th Cir.1986); *Barco Arroyo v. Federal Emergency Management Agency*, 113 F.R.D. 46, 49 (D.Puerto Rico 1986).

One panel of the Seventh Circuit has written that "[l]ater service or later knowledge by the defendant [of the pendency of the action] is irrelevant" to the good cause analysis. *Geiger*, 850 F.2d at 332. Nonetheless, the Seventh Circuit has more recently held that in some instances the lack of prejudice to the defendant "is a factor that ought to be considered in assessing whether the [good cause] explanation justifies relief." *Floyd*, 900 F.2d 1045, 1049 (7th Cir.1990).

In construing and applying the Rule, courts are to keep in mind that this provision "is intended to force parties and their attorneys to be diligent in prosecuting their causes of action." *Geiger*, 850 F.2d at 331 (quotation omitted). At the same time, the Rule "was not meant to be enforced harshly or inflexibly." *Floyd*, 900 F.2d 1045, 1049 (7th Cir.1990).[3]

cussion of issue). At oral argument the plaintiff asserted that the government waived this defense by seeking enlargements of time up to and through the 120th day after the filing of the complaint, and by not raising the issue until more than 120 days had passed. Although this Court is not prepared to rule that this "delay" constitutes a waiver in this setting, the lack of notice of the defects in service to the plaintiff within 120 days has at least some significance in the unique posture of this case, as is discussed below.

**3.** The Court notes that in any context in which the term is used, the precise meaning of "good cause" is seemingly always less than clear. For instance, Rule 4(a)(5) of the Federal Rules of Appellate Procedure provides that an extension of time can be obtained for filing a notice of appeal upon a showing of "good cause" or "excusable neglect." In the Seventh Circuit, there is some debate over which term is actually more demanding. *See Lorenzen v. Emp. Ret. Plan of Sperry & Hutchinson*, 896 F.2d 228, 231–32 (7th Cir.1990) (Judge Posner notes and calls into question the Seventh Circuit cases that stand for the proposition that excusable neglect is more stringent than good cause). Despite Judge Posner's concern that it is "semantic punctilio" if not "hairsplitting" to try to distinguish the two terms, *Id.* at 231, the term "good cause" generally been deemed to be less demanding than excusable neglect by the Seventh Circuit in the

notice of appeal setting. *See Parke–Chapley Construction Co. v. Cherrington*, 865 F.2d 907, 909–11 (7th Cir.1989); *Redfield v. Continental Casualty Corp.*, 818 F.2d 596, 601 (7th Cir.1987).

The Court notes that this same dichotomy between good cause and excusable neglect is not present in this setting. Even though Fed.R. Civ.P. 6(b) allows an extension of time to do an act "required to be done within a specified time" under the Rules where "excusable neglect" is shown, the courts are in apparent agreement that Rule 6(b)'s general provisions are inapplicable in this context where Rule 4(j) has its own specific standard. *See, e.g., United States v. Kenner General Contractors*, 764 F.2d 707, 711 (9th Cir.1985); *Cox v. State of New Jersey*, No. 89–4272, slip op., 1990 WL 61781, 1990 U.S.Dist. LEXIS 5638 (D.N.J. May 4, 1990).

Yet, because terms used in different statutes or rules are ordinarily presumed to have the same meaning, *Hotel Equities Corp. v. Commissioner*, 546 F.2d 725, 728 (7th Cir.1976), this District Court is initially inclined to conclude as a matter of reference that "good cause" is, in fact, a lesser standard than "excusable neglect." *But see Winters v. Teledyne Movible Offshore, Inc.*, 776 F.2d 1304, 1306 (5th Cir.1985) (noting that "good cause" would appear to require at least as much as "excusable neglect") (noted by Seventh Circuit in *Floyd*, 900 F.2d at 1147; *Cox v. State of New Jersey*, No. 89–4272, slip op.,

Beyond these general principles, there are several unique circumstances that must be addressed in this case. The first is the fact that the plaintiff amended her complaint and effected service *of the amended complaint* within 120 days of its filing. Plaintiff argues that this satisfies the requirements of Rule 4(j).

Although the argument is creative, as noted by this Court in its earlier opinion, this theory has already been rejected by the Seventh Circuit. In *Del Raine v. Carlson*, 826 F.2d 698, 705 (7th Cir.1987), the court dismissed the same argument, writing:

> We do not believe ... that the order [allowing the complaint to be amended] started the 120 days running again from the date when the amended complaint was filed. The purpose of allowing complaints to be amended is to enable the pleadings to be conformed to the developing evidence rather than to extend the time for service indefinitely.

*Del Raine*, 826 F.2d at 705.

This is entirely logical, for Rule 4(j) states that service must be effected within 120 days after the "filing of the *complaint....*" *See* Fed.R.Civ.P. 4(j) (emphasis added). The Rule does not speak to *amended* complaints, and as the government points out in its brief, to allow an amendment to extend the time for service would go a long way towards effectively repealing the mandate of Rule 4(j). Thus, the amendment and later service does not remove the 4(j) defense. However, the fact that complete service was eventually obtained, and done so promptly by Mr. Ruge after entering his appearance, is not without some relevance in this setting.

The second matter peculiar to this case is the fact that plaintiff filed the action *pro se*, and, for all intents and purposes, did not receive the benefits of appointed counsel that are contemplated by 28 U.S.C. § 1915(d), 42 U.S.C. § 2000e–5(f), and Local Rule 36, all of which authorize the appointment of counsel in certain civil cases such as this. Although there are cases standing for the proposition that a party's *pro se* status should be given little if any regard in this analysis,[4] this Court is not yet ready to rule that good cause does not exist given the uniqueness of today's case.

In the Seventh Circuit the district courts are required to be lenient with *pro se* litigants and to ensure that justice is done on the merits rather than on the basis of procedural technicalities wherever possible. This is demonstrated by the landmark holding in *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir.1982), where the district courts were directed to ensure that prisoners are specifically informed of the requirements of Rule 56 in the summary judgment context to guard against procedural defaults.

Indeed, even in this Rule 4(j) context, several courts have taken note of the special leniency that must be afforded *pro se* litigants. *See, e.g., Bowers v. Buchanan*, 110 F.R.D. 405 (S.D.W.Va.1986) (where *pro se* litigant had not served defendant, court gave him an opportunity "in fairness" to show good cause); *Ray v. Mayfield*, No. 85–C–9186, slip op., 1987 WL 13589, 1987 U.S.Dist. LEXIS 6150 (N.D.Ill. June 30, 1987) (*pro se* status of prisoner held to be good cause).

Although the government is correct that today's lawsuit is not a prisoner case, the general principle of such cases that disputes should be litigated on their merits

---

1990 WL 61781, 1990 U.S. Dist. LEXIS 5638 (D.N.J. May 4, 1990) (holding that good cause is more stringent than excusable neglect). In any event, although it is not outcome determinative to this case, and while it probably is "hairsplitting," this Court notes that the term "good cause" can encompass more scenarios than the "excusable neglect" standard, and as a result the good cause standard is at least broader in this respect.

**4.** *See, e.g., Kersh v. Derozier*, 851 F.2d 1509, 1512 (5th Cir.1988) (*pro se* litigant's ignorance of

Rule 4(j) did not excuse non-compliance); *Sipes v. Galaxy Airlines, Inc.*, 119 F.R.D. 691 (D.Nev. 1988) (same where no effort was made to serve the defendants); *Bryant v. Rohr Industries, Inc.*, 116 F.R.D. 530 (W.D.Wash.1987) (ignorance not good cause); *Carlton v. Head Nurse*, No. 85–3546, slip op., 1989 WL 125365, 1989 U.S.Dist LEXIS 12379 (D.N.J. Oct. 16, 1989) (*pro se* status given little regard where more than four years had passed without service).

where possible must at least be noted. Moreover, this is not a simple *pro se* case where the litigant assumes responsibility for prosecution of the action. To the contrary, Ms. Patterson relied, and justifiably so, on the Court's order appointing counsel for her.

Further analysis of today's case reveals that the failure to effect service must largely be attributed to the Clerk's office and the two attorneys (particularly the second) who were initially appointed by the Court to represent the plaintiff. Although courts have held that attorney inadvertence does not constitute good cause, *see Geiger,* 850 F.2d at 333 (citing cases), the Seventh Circuit has expressly "refused to fashion a *per se* rule that attorney inadvertence, when accompanied by other factors, prevents a finding of 'good cause.'" *Floyd,* 900 F.2d 1045, 1047 (7th Cir.1990). Although these other factors must be "substantial" and "extenuating," *Id.,* it must be remembered that the setting in this case is unusual in many respects.

This circumstances of this case are "substantial" and "extenuating" because the plaintiff came to the Court seeking assistance, and the help that was initially provided pursuant to Congressional directive and Local Rules was both delayed and inadequate. Initially, the Clerk's office did not advise Ms. Patterson of the 120 day requirement or the necessity of serving federal officials other than Secretary Brady.

To the contrary, Ms. Patterson's civil cover sheet was filled out by the Clerk's office as a case not involving the federal government.[5]

Thereafter, it took the Clerk's office 116 days to even appoint counsel for Ms. Patterson, and when it did find her an attorney, it failed to ensure such counsel was even qualified to represent her in federal litigation. Attorney Abbott, who never entered an appearance and who probably has little if any awareness or understanding of Rule 4(j), can hardly be blamed for failing to obtain service within four days of his appointment, particularly when the government had not yet raised the defense.[6]

Thus, without more, it is seen that the blame for the initial failure to serve within 120 days must be placed, not on Ms. Patterson or her first attorney, but squarely on the Clerk's office.[7] Ms. Patterson did everything in her power to effect proper service, and in fact obtained proper service over the main defendant with ample time to spare. She had no reason, as a non-lawyer relying on the Clerk's office to obtain counsel for her, to know that service upon the Attorney General and the U.S. Attorney was also necessary. Moreover, because the government moved for enlargements of time and did not raise the issue of defective service until *after* 120 days, Ms. Patterson was not put on notice of such a requirement.[8] It must be remembered that Rule

---

**5.** This is not to suggest that the Clerk's office has a duty to inform all litigants of the requirements of Rule 4(j), but only to point out that when advice is given by the Clerk's office, it should be reasonably accurate and complete. Whether the failure to give such advice, standing alone, would constitute good cause in this setting is doubtful, but need not be decided in today's case where the real problem was the delay in appointing counsel.

**6.** One need only imagine Abbott's defense in a malpractice action to see that his culpability is seemingly if not actually nonexistent.

**7.** Other courts have found good cause to exist when the failure of a *pro se* litigant to effect service was attributable to the Clerk or the Marshal's Service. *See Sellers v. United States,* 902 F.2d 598, 602 (7th Cir. May 16, 1990) (Marshal's failure to accomplish service per court order "is automatically 'good cause' within the meaning

of Rule 4(j)"); *Satchell v. Romano,* No. 81–C– 603, slip op., 1988 WL 68762, 1988 U.S. Dist. LEXIS 6059 (E.D.N.Y. June 2, 1988) (Marshall's service); *Turrisi v. Wechsler & Krumholz, Inc.,* No. 87–C–6791, slip op., 47 F.E.P. 38, 163, 1988 WL 78325 (S.D.N.Y. July 13, 1988) (Clerk's office).

**8.** The Court accepts the assertion of government's counsel that she was not "laying a trap" for the plaintiff. Other than the coincidence that the motions for additional time correspond approximately to the 120 days of Rule 4(j), there is nothing suggesting such a tactic by Ms. Bailey. To the contrary, if Ms. Bailey had deliberately obtained the extensions of time in order to invoke Rule 4(j), one would expect that she would have then raised Rule 4(j) in her original motion to dismiss. However, although she raised the issue of defective service in her first motion, she did not raise the Rule 4(j) matter until much later. It is unthinkable that Ms.

4(j) only requires good cause as to why service was not obtained within the first 120 days, and plaintiff has amply demonstrated good cause in this respect.

Thus, the fact that a second attorney was appointed after 120 days had expired, and that this lawyer failed in his representation of the plaintiff, is not controlling. Dazey never had the opportunity to effect proper service within 120 days because his appointment came *after* this time limit of Rule 4(j) had expired. Although this does not excuse Dazey's failure to resist the motion to dismiss and to attempt to show good cause why Ms. Patterson or her first attorney did not obtain service within 120 days, it does not preclude a finding of good cause under Rule 4(j).

█ Had Dazey been appointed at, say, the 100th day, and had the defense been raised at that time, the inquiry would be different, for the specter of "simple attorney neglect" would be front and center. But the question is *"why such service was not made within that [120 day] period."* *Floyd*, 900 F.2d at 1148 (emphasis in original). The fact that Dazey further delayed this litigation by failing to effect service upon the additional federal authorities required to be served, though not without relevance, does not answer why service was not made prior to his appointment. Thus, the government need not be concerned that today's case will establish a separate standard of diligence for court-appointed attorneys. To the contrary, the standard for such lawyers should be the same as for all others. The real crux of today's case is the failings of the Clerk's office.[9]

Additionally, and in deference to the Clerk's office, it should be noted that Local Rule 36, the authority under which all three attorneys have been appointed in this case, was in its infancy when Ms. Patterson requested counsel. This Rule, which establishes a voluntary Civil Legal Assistance Panel in which attorneys can enroll and be appointed from, became effective on October 28, 1988, less than two weeks before Ms. Patterson filed her action and requested appointed counsel.

The Court takes judicial notice of the fact that for some time after the Rule was passed, few if any attorneys signed up for the voluntary Panel. This might help explain why the first two attorneys who were appointed in this case were not up for the task. In essence, there was initially a shortage of attorneys to fulfill the rightful needs of Ms. Patterson and other similarly situated plaintiffs. This, of course, was not Ms. Patterson's fault, and she should not be held to suffer the consequences as a result.

Other factors support the conclusion that good cause exists in this particular case. For instance, the lack of prejudice to the defendant is a proper consideration in these matters, *Floyd*, 900 F.2d 1045, 1048–49 (7th Cir.1990), for unlike *Floyd*, this is not a case of "simple attorney neglect," *Id.* at 1049, and there is no articulated prejudice to the defendant in this case. Although the plaintiff did not initially properly serve the Attorney General and the local U.S. Attorney, she did initially serve the Secretary of the Treasury and the Commissioner of the I.R.S. Not surprisingly, the government's representatives learned of the proceedings and the local U.S. Attorney brought the pending motion to dismiss. Thus, the government knew of the litigation, and the government concedes (Reply

Bailey purposefully delayed raising Rule 4(j) until later in order to mask some grand 4(j) scheme.

**9.** Even though the government asserts that it is irrelevant that Mr. Ruge perfected complete service within 120 days of his appointment, the government would like there to be a new "120–day clock" from the time that Dazey entered the case. However, the Court must again emphasize the unique circumstances of this case in which the initial failure to serve is attributable

to the Clerk's office, and the fact that Rule 4(j) simply asks if there is good cause for failing to serve within this initial 120 day period. It is true that Dazey's failings appear to be those of "simple attorney neglect," but this neglect did not occur in a vacuum. Given the entire procedural history of this case, the fact that only technical service upon the defendant's representatives was lacking, the plaintiff's own diligence, and the lack of prejudice to the defendant, the Court finds it improvident to focus solely on Dazey's actions.

of March 16, 1990, at 9) that at least three of the discrimination allegations could be re-filed if a Rule 4(j) dismissal were entered.

Moreover, there is at least one recent case against the government, and one that was noted with seeming approval by the Seventh Circuit in *Floyd*, 900 F.2d at 1048–49 in which the absence of prejudice was noted to be significant where service was not obtained over all the government entities required to be served under Rule 4(d)(4). Specifically, in *Roque v. United States*, 857 F.2d 20 (1st Cir.1988), the First Circuit indicated that the plaintiff's failure to serve the Attorney General, when the local U.S. Attorney was served, did not amount to prejudice. In today's case, then, the technical failure to serve the government's legal representatives is not as critical because the federal defendant himself had been timely served.

Additionally, it must be noted that once Mr. Ruge entered the case, he took action to properly serve the government's representatives and, in fact, obtained proper service within 120 days of his own appearance. Although this certainly does not remove the specter of Rule 4(j), it seems, where Congress has left the matter to the district courts' discretion, to be a factor worthy of at least some consideration.

Finally, recent decisions from the Seventh Circuit indicate that this Court must be concerned with the practical ramifications of this case and not just the technicalities of procedural rules. For instance, in the failure to prosecute setting, the Seventh Circuit has recently held that a party should not be held to suffer where the default was the result of "inadequate and inattentive representation by counsel." *Beeson v. Smith*, 893 F.2d 930, 931 (7th Cir.1990). In *Beeson*, the district court dismissed the plaintiffs' personal injury case with prejudice for failure to prosecute. In reversing the district court, the Seventh Circuit noted that the plaintiffs were not personally at fault for the failure to prosecute, and held that a "more appropriate remedy would have been sanctions against their attorney for his desultory and off-hand handling of their case." *Id.* Although *Beeson* does not involve Rule 4(j), it again shows the Seventh Circuit's concern with procedural defaults of litigants where the litigants themselves are not to blame. *See also Reinsurance Co. of America v. Administratia Asigurarilor de Stat*, 902 F.2d 1275, 1278 (7th Cir.1990) (suggesting that client's own diligence may be a factor in the Rule 60(b) setting).

In conclusion, Ms. Patterson took every reasonable action (and even some that could be called excessive) to press her claim. She timely served the Secretary of the Treasury, which is the proper defendant in this action, and her failure to serve the Secretary's legal representatives within 120 days can be largely if not wholly attributed to the Clerk's office, upon which she justifiably relied for assistance. Moreover, Ms. Patterson was not put on notice of the incompleteness of service by the government within 120 days. Later, when diligent counsel was appointed, proper service was obtained over the government's representatives.

Rule 4(j) does not require dismissal where a plaintiff can show good cause why service was not made within 120 days. Although the government's persistence and advocacy on this matter is commendable and professional, Ms. Patterson has nonetheless shown such cause. Accordingly, this Court DENIES the motion to dismiss.

IT IS SO ORDERED.