Don **CAMPBELL**, Reg. No. N–23385, Plaintiff,

v.

**ILLINOIS DEPARTMENT OF CORRECTIONS, et al.,** Defendants.

No. 92 C 3265.

United States District Court, N.D. Illinois, Eastern Division.

Jan. 23, 1995.

Don Campbell, Waupun, WI, pro se.

Gregory A. McConnell, McDermott, Will & Emery, Chicago, IL, for plaintiff.

Illinois Department of Corrections, Susan Takata O'Leary, Illinois Department of Corrections, Chicago, IL, Vanessa Victoria Alexander, Illinois Attorney General's Office, Chicago, IL, for defendants.

## *MEMORANDUM OPINION AND ORDER*

ANN CLAIRE WILLIAMS, District Judge.

Plaintiff Don Campbell has brought suit against the Illinois Department of Corrections, Michael O'Leary, Howard Peters, Charles Williams, John Groves, Michael Lane and Carol Mills, alleging that defendants kept him imprisoned beyond his legal release date in violation of the Eighth Amendment and the due process clause of the Fourteenth Amendment. On February 25, 1993, this court granted defendants' motion to dismiss plaintiff's due process claim. This matter is presently before the court on defendants' motion for summary judgment on Campbell's Eighth Amendment claim and their motion to dismiss Williams and Mills under Federal Rule of Civil Procedure 4(m). For the reasons stated below, defendants' motion for summary judgment is granted in part and denied in part. Defendants' motion to dismiss is denied.

### Background

In October 1983, plaintiff Don Campbell[1] was convicted of residential burglary and sentenced to four and one half years imprisonment, with credit for time served from September of 1983. (Defendants' Statement of Uncontested Facts ¶ 11 ("Statement of Facts")). On February 29, 1986, he was released from prison with credit for good time served, and began a Mandatory Supervised Release ("M.S.R.") term of two years, as required by Illinois law. (Statement of Facts ¶ 15; Ill.Rev.Stat. ch. 38, para. 1005–8–1(d)(2)). On July 23, 1986, plaintiff was arrested for the unlawful use of a weapon. He was convicted of that charge on December 10, 1986, receiving a two-year sentence for the conviction. (*Id.* ¶ 16). Because this latter conviction occurred during the plaintiff's M.S.R. term, he was declared an "M.S.R. violator." (*Id.* ¶ 17). Campbell's M.S.R. term was revoked and he was required to serve the remainder of his M.S.R. time, as well as time not served from his previous sentence in prison. (*Id.* ¶ 17). These terms were to run concurrently with his new sentence for the unlawful use of a weapon. (*Id.* ¶ 18).

Following his reincarceration, plaintiff allegedly committed a number of acts warranting the revocation of some of his good conduct credits. Over a three-day period in July 1987, the Prison Review Board revoked more than two and one-half years of Campbell's good conduct credits because he had threatened and assaulted several correctional officers and fellow inmates and disobeyed numerous direct orders. In all, Campbell lost a total of three years and three days of good conduct credits. (*Id.* ¶ 28).

Suspecting that defendants were misusing the revocation of these credits to illegally prolong his sentence, plaintiff wrote a series of letters to prison officials requesting an accounting of his sentence. (*Id.* ¶ 29). In early 1987, plaintiff received a reply to his first request indicating that his projected discharge date was July 24, 1987. (Defendants' Exhibit 18). However, after a subsequent loss of good time credits for several disturbances, the plaintiff was informed that his new projected discharge date was July 28, 1990. (*See* Group Exhibits 3–8 and Defendants' Exhibit 19). He corresponded two more times with prison officials about the calculation of his sentence, and was informed both times that his sentence would run until 1990. (Defendants' Exhibits 20 and 21).

Dissatisfied with the way his complaints were being handled by prison officials, Campbell filed a habeas corpus petition in state court. (Statement of Facts ¶ 32). In an unpublished opinion by the Third District Appellate Court of Illinois, the plaintiff was found to have been incarcerated beyond his maximum sentence. *Campbell v. O'Leary*, 190 Ill.App.3d 1108, 158 Ill.Dec. 64, 573 N.E.2d 877 (1989). The appellate court remanded the case to a lower court for "detailed findings on the propriety of the [state's] calculations." *Id.* at 4. On July 30, 1990, the Will County Circuit Court found that plaintiff's sentence should have run to June 16, 1988, "and in any event no later than June 16, 1989." *Id.* at 3. The court then ordered the plaintiff's release from custody. *Id.*

Unfortunately for Campbell, just two and one-half weeks earlier, on July 12, 1990, the state of Michigan had revived an outstanding warrant for the plaintiff's arrest. The warrant had been inactive for seven years. (Plaintiff's Response, Affidavit of Frank W. Ralph ¶ 10). Instead of being released from prison, defendant was immediately turned over to the custody of the state of Michigan. (Statement of Facts ¶ 33).

### Discussion

**I. Rule 4(m)**

Two of the defendants named in the complaint have not been served: Charles Williams, a clerk at the Pontiac Correctional Center, and Carol Mills,[2] a clerk at Stateville

---

1. Campbell also goes by the name of Donald Lee. As most of the record identifies the plaintiff as Donald Campbell, the court will use this name throughout the opinion.

2. At the time he filed suit, in 1992, plaintiff apparently did not know Ms. Mills' last name, and named her in his initial complaint as "Carol," along with her occupation as "Clerk II Stateville Correctional Center." After conducting discovery, plaintiff determined that "Carol" was in

Correctional Center. Both Williams and Mills worked in the sentence calculating division of the Illinois Department of Corrections during Campbell's incarceration. Defendants have moved to dismiss Williams and Mills from the case, pursuant to Federal Rule 4(m).[3] (Defendants' Motion for Summary Judgment at 12). For the reasons stated below, the motion is denied.

■■■ Rule 4(m) provides for the dismissal without prejudice of a complaint which is not properly served on a defendant within 120 days of its filing. Adopted in 1983, Rule 4(m) "attempts to harmonize the open-door policy of the federal court system and the mandate in Rule 1 for the 'just, speedy, and inexpensive determination of every action.'" 4A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1137. As the case law makes clear, the rule is mandatory. *Floyd v. United States,* 900 F.2d 1045 (7th Cir.1990); *Wei v. Hawaii,* 763 F.2d 370 (9th Cir.1985). However, dismissal under Rule 4(m) is not warranted if plaintiff can show "good cause" for the failure to properly effect service. Fed.R.Civ.P. 4(m). A court's determination of good cause under Rule 4(m) "entail[s] discretionary conclusions by the district court that will not be disturbed absent an abuse of discretion." *Floyd,* 900 F.2d at 1046.

Plaintiff filed his suit on May 18, 1992. As of this date, neither Mills nor Williams have been served with a copy of the complaint. Because of this long delay in service, well over the 120 days that Rule 4(m) allows, defendants have moved to dismiss Williams and Mills from the case. (Defendants' Motion at 14). Under Rule 4(m), unless plaintiff can show good cause for his failure to properly serve defendants, the court must dismiss the complaint. After carefully reviewing the parties' briefs and the relevant law, the court finds that good cause has been shown.

■■■ The court initially notes that plaintiff filed this suit without the assistance of coun-

sel. Though certainly not dispositive, plaintiff's *pro se* status entitles him to a "certain degree of leniency so as his case is justly resolved on its merits rather than on the basis of procedural technicalities to the extent possible." *Poulakis v. Amtrak,* 139 F.R.D. 107, 109 (N.D.Ill.1991). *See generally Lewis v. Faulkner,* 689 F.2d 100 (7th Cir. 1982). In recognition of this principle, numerous courts within this circuit have interpreted Rule 4(m)'s requirement of "good cause" liberally in cases where *pro se* litigants have made good faith efforts to comply with the Rule's dictates. *See, e.g., Poulakis,* 139 F.R.D. at 109; *Patterson v. Brady,* 131 F.R.D. 679 (S.D.Ind.1990); *Walker v. Takata,* 1993 WL 225353 1993 U.S.Dist. LEXIS 8424 (N.D.Ill. June 22, 1993); *Calderon v. True,* 1993 WL 413970 1993 U.S.Dist. LEXIS 14577 (N.D.Ill. Oct. 15, 1993). As the Seventh Circuit has observed, "Congress intended Rule [4(m)] to be a useful tool for docket management, not an instrument of oppression." *Floyd,* 900 F.2d at 1049 (quoting *United States v. Ayer,* 857 F.2d 881, 885–86 (1st Cir.1988)).

■■■ In *Patterson,* a *pro se* plaintiff was found to have done "everything in her power to effect service," but a mistake by the clerk's office had resulted in a 20–month delay in service of a crucial defendant. The court held that since the fault for the failure to serve rested "squarely on the Clerk's office," plaintiff had shown good cause for delay of service. *Patterson,* 131 F.R.D. at 684–85. Similarly, in *Poulakis,* a *pro se* plaintiff was erroneously informed by the clerk's office that a return receipt on a mailed summons would serve as proof of service. *Poulakis,* 139 F.R.D. at 108. The court there found good cause for the delay in service, since the *pro se* plaintiff had "sought to learn of the appropriate method for service of process and believed that he had done so." *Id.* In another case, the court refused to dismiss two defendants who had not been timely

fact Ms. Carol Mills. He did not make this determination until 1994.

**3.** Rule 4(m) provides: "If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service

was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion."

served by a *pro se* plaintiff who was incarcerated in an Indiana state prison, stating "[t]he circumstances of a plaintiff's *pro se*, Indiana prisoner status" were enough to establish good cause." *Ray v. Mayfield,* 1987 WL 13589 1987 U.S.Dist. LEXIS 6150 (N.D.Ill. June 30, 1987). As these cases demonstrate, when *pro se* litigants have reasonably relied to their detriment on the advice and services of others, especially individuals employed by the courts, a showing that they have made a diligent effort to effect service will generally suffice as good cause for a delay in service.

■ Campbell filed this suit *pro se,* and at all times during these proceedings has been incarcerated in a Wisconsin state prison. Upon filing suit, plaintiff promptly provided the U.S. Marshall's Office with the proper summons forms. (Plaintiff's Response to Defendants' Motion for Summary Judgment at 6). He also made this court aware of his concerns regarding his need to rely on the Marshall's Office to properly serve defendants. *Id.* Four of the defendants named in plaintiff's complaint were in fact served within 31 days of filing. (Defendants' Motion at 13). Plaintiff communicated with the Marshall's office by phone and was allegedly told that he did not have to worry about the service being effected. (Plaintiff's Response at 7). During discovery, plaintiff learned the full name of Ms. Mills and located the current places of employment for both her and Mr. Williams, in order to effect proper service. (Plaintiff's Motion of March 23, 1994 at 2–3).

■ While very concerned about the delay, the court is satisfied that plaintiff has made a diligent effort to serve the two defendants. Like the plaintiffs in *Mayfield, Patterson,* and *Poulakis,* Campbell reasonably relied, to his detriment, on others to effect service. Although the delay in service here was nearly two years, the court notes that good cause was found in *Patterson* for a delay of 20 months in the service of a summons by a *pro se* plaintiff. *Patterson,* 131 F.R.D. at 681. Considering that, unlike the plaintiff in *Patterson,* Campbell was not free to attempt to serve the defendants on his own, it does not seem unreasonable to excuse a similar period of delay here.[4] Moreover, the court notes that defendants have not claimed that either Williams or Mills were prejudiced by this delay. Though lack of prejudice, standing alone, is not a sufficient basis for a finding of good cause, it can and in many cases should be taken into account. *See Floyd,* 900 F.2d at 1049.

On October 21, 1993, this court granted plaintiff until December 2, 1993 to discover the remaining defendants' addresses and to issue alias summonses. Plaintiff now has these addresses. The court will accordingly grant plaintiff one final extension of time to February 10, 1995 within which to issue these summonses. Plaintiffs' March 23, 1994 Motion Requesting Issuance of Alias Summons on Defendant Williams (and Mills) is hereby granted.

## II. *Eleventh Amendment Immunity*

■ Defendants next assert that they are immune from suit under the Eleventh Amendment. (Defendants' Motion at 9). The Eleventh Amendment bars suit in federal court by an individual against a state or an agency of the state. *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 66, 109 S.Ct. 2304, 2310, 105 L.Ed.2d 45 (1989). Plaintiff has named the Illinois Department of Corrections ("IDOC"), a state agency, as a defendant in this suit for damages under section 1983. This suit is clearly barred by the Eleventh Amendment. Accordingly, summary judgment is granted in favor of IDOC.

■ The Eleventh Amendment also bars suit against employees of the state in their official capacities, as this is treated as a suit against the state itself. *Will,* 491 U.S. at 71, 109 S.Ct. at 2312. Ordinarily, a suit against defendants acting under the color of state law is construed to be against the defendants in their official capacity, unless it is explicitly stated by the plaintiff that the defendants are being sued in their individual capacities. *Yeksigian v. Nappi,* 900 F.2d 101, 104 (7th Cir.1990). Campbell has failed to specifically name defendants in their indi-

---

4. This is especially true in light of Campbell's apparent difficulties in receiving copies of this court's orders. (*See* Pl. January 31, 1994 Emergency Motion for Extension of Time).

vidual capacities. In fact, as defendants point out, Campbell has consistently referred to them in his various pleadings by both their name and official titles, thereby implying that he has sued them in their official capacities. (Defendants' Motion at 12).

Nevertheless, as noted above, *pro se* complaints "must be construed liberally and held to less stringent standards than those applied to complaints drafted by attorneys." *Swofford v. Mandrell*, 969 F.2d 547, 549 (7th Cir.1992). Courts can, and in many cases should, consider allegations made in the other filings of *pro se* plaintiffs to assist them in this regard. In his response to defendants' motion for summary judgment, Campbell explains that he used the defendants' official titles for identification purposes only, and that he always intended to sue them in their individual, not official capacities. (Plaintiff's Response at 5). The court accepts Campbell's explanation, and will construe his complaint to name defendants in their individual capacities. Defendants' Motion for Summary Judgment on Eleventh Amendment grounds is denied.

### III. *Eighth Amendment Violation*

Defendants have moved for summary judgment in favor of all named defendants (including the two who have not yet been served) on Campbell's Eighth Amendment claim. For the reasons stated below, the court finds that summary judgment on this claim is not appropriate at this time.

 Rule 56(c) states that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The evidence that has been brought forth is examined in the most favorable light to the non-moving party. *Bowyer v. United States Dept. of Air Force*, 804 F.2d 428, 430 (7th Cir.1986). It is up to the non-moving party, however, to bring forth specific facts demonstrating that there is a genuine issue of material fact that must be resolved at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). If a factual dispute is found, it must be over a fact that is material to an essential element of the non-moving party's case. *Id., Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Even if the facts are not in dispute, summary judgment would be inappropriate where there is a disagreement about the inferences that may be reasonably drawn from the facts. *Environmental Transp. Sys. v. ENSCO, Inc.*, 969 F.2d 503, 510 (7th Cir.1992); *Bowyer*, 804 F.2d at 430.

 Plaintiff has charged that defendants have violated his Eighth Amendment rights by holding him in prison well over the term of his sentence. The Supreme Court has recently clarified the standard for liability of prison officials in section 1983 cases charging a deprivation of a prisoner's Eighth Amendment rights. *Farmer v. Brennan*, — U.S. —, —, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994). For a prison official to be held liable for violating the Eighth Amendment, two conditions must be met. First, the deprivation must be "sufficiently serious," resulting in the denial of "the minimal civilized measure of life's necessities." *Id.* Second, the official who has committed the deprivation must have had a "sufficiently culpable state of mind." *Id.* Specifically, the official must have had either actual intent to cause the deprivation, or have been "deliberately indifferent" to a substantial risk that such a deprivation would occur. *Id.* at — - —, 114 S.Ct. at 1977–78. The standard for deliberate indifference is subjective and based on actual knowledge of the substantial risk; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at —, 114 S.Ct. at 1979. If, in the face of such knowledge, the official chose to do nothing to prevent the harm from occurring, the official would then be liable. *Id.*

### A. *Campbell's Deprivation was Sufficiently Serious*

 Incarceration of an individual beyond the term of his sentence is "quintessentially punitive." *Sample v. Diecks*, 885 F.2d

1099, 1108–09 (3rd Cir.1989); *see also Moore v. Tartler*, 986 F.2d 682 (3d Cir.1993); *Haygood v. Younger*, 769 F.2d 1350 (9th Cir. 1985); *Lundblade v. Franzen*, 631 F.Supp. 214 (N.D.Ill.1986). Even if such imprisonment is the result of an innocent error on the part of the state officials who were responsible, it is still punitive in nature, though the mistaken nature of the punishment may bear on whether the punishment was deliberately imposed. *Id.* at 1108–09. Anything more than a *de minimis* incarceration beyond a prisoner's proper sentence satisfies the requirement, under *Farmer*, —— U.S. at ——, 114 S.Ct. at 1977, that the punishment, if inflicted along with the culpable state of mind, be "sufficiently serious" to pose a constitutional violation. *See Haygood*, 769 F.2d at 1354 ("[d]etention beyond the termination of a sentence could constitute cruel and unusual punishment if it is the result of 'deliberate indifference' to the prisoner's liberty interest"). Here, plaintiff was imprisoned up to two years beyond his legal release date. The deprivation was sufficiently serious to support Campbell's Eighth Amendment claim.

### B. *Culpable State of Mind*

 Whether defendants acted with a sufficiently culpable state of mind is the real question at issue here. As noted above, plaintiff has alleged that defendants, especially Williams intentionally engaged in a "diabolical scheme" to keep him in prison beyond his term.

In support of his claim against Williams, plaintiff has submitted an affidavit from Frank Ralph of the Office of the State Appellate Defender's Office, the attorney who represented him in the *habeas corpus* proceedings before the Illinois courts. (*See* Plaintiff's Response, Affidavit of Frank Ralph). In the affidavit, Ralph states that in his dealings with Williams, Williams exhibited a "very strong antagonism" towards plaintiff. Williams quotes from a letter written by another Assistant Appellate Defender, Verlin Meinz, in which Meinz also expresses concern about Williams' attitude towards plaintiff. Meinz relates how Williams "denigrated our efforts on Mr. Campbell's behalf, in the

process referring to Mr. Campbell in the most unflattering ways." He also points out that Williams appeared to be "absolutely gleeful" about the fact that, since a Michigan warrant for the plaintiff had been revived around the time that the Illinois court had ordered plaintiff's release, plaintiff was not to be fully released from custody. Meinz dealings with Williams led him "to wonder about Mr. Williams' overall involvement with the Campbell case." (*See* Affidavit of Frank Ralph ¶ 15).

Evidence of Williams' personal animus against Campbell is insufficient, in and of itself, to establish that he intentionally sought to keep Campbell imprisoned beyond his release date. Our nation's prisons are no doubt well-stocked with prison guards and officials who have no particular fondness for their charges. Indeed, given the numerous threats and assaults Campbell is alleged to have committed against prison guards and his fellow inmates, Williams' dislike for Campbell appears to be perfectly understandable. However, when Williams' alleged personal animus against Campbell is considered in conjunction with the magnitude of the sentencing error, and the apparent ease with which it could have been detected by someone in Williams' position, Campbell's theory of the case is less easily dismissed. Under these circumstances, a reasonable fact-finder could find that Williams intentionally harmed Campbell by failing to correct any sentencing errors he discovered when investigating plaintiff's numerous complaints. Summary judgment on behalf of defendant Williams is therefore denied.

Plaintiff alleges that the other defendants were also in on Williams' "diabolical scheme" against him. With respect to these defendants, however, Williams only evidence of *intentional* wrong-doing is his assertion that he was not given the customary $100.00 "gate money" when he was released from custody in July 1990. (Plaintiff's Response at 4). In support of his claim that this seemingly minor omission demonstrates an intent to punish him, plaintiff again cites Ralph's affidavit:

> "we were told that [plaintiff] had received gate money upon his initial release from custody and that he was entitled to none

when he was released after reincarceration as a parole violator.... When we pointed out the following day that Mr. Campbell had been incarcerated for a new conviction as well as parole violation, and therefore should have gotten gate money for the new offense, we were told that the warden in his discretion would determine whether Mr. Campbell would get any money. The warden subsequently denied any money to Mr. Campbell.

(Plaintiff's Response, Affidavit of Frank Ralph ¶ 13).

Like defendants, the court fails to grasp how this single, apparently unrelated, incident could support a reasonable finding that they intentionally conspired to keep Campbell incarcerated beyond his release date. As defendants point out, section 502.320 of the Rule of the Illinois Department of Corrections states that the granting of gate money is a decision entirely within the discretion of the warden. (Defendants' Motion at 8). Moreover, at the time of his release, Campbell was immediately turned over to the Michigan Department of Corrections on an outstanding warrant. Unlike most inmates who are released from state custody, Campbell did not need the money for transportation or living costs. Accordingly, with respect to all of the defendants, except Williams, Campbell's section 1983 claim hinges on his ability to show that they acted with deliberate indifference to his predicament.

■ To demonstrate deliberate indifference in the context of a claim brought by an individual who has been incarcerated beyond his legal release date:

a plaintiff must first demonstrate that a prison official had knowledge of the prisoner's problem and thus of the risk that unwarranted punishment was being, or would be, inflicted. Second, the plaintiff must show that the official either failed to act or took only ineffectual action under the circumstances indicating that his or her response to the problem was a product of deliberate indifference to the prisoner's plight. Finally, the plaintiff must demonstrate a causal connection between the official's response to the problem and the infliction of the unjustified detention.

*Sample*, 885 F.2d at 1108–09; *see also Moore*, 986 F.2d at 686. This formula is in line with the requirement of the more recent *Farmer* decision that, in order to be deliberately indifferent, officials must be actually, subjectively, aware that a problem exists and still fail to take reasonable steps to alleviate the problem. *Farmer*, —— U.S. at ——, 114 S.Ct. at 1979. Thus, if an official failed to prevent a harm because he or she was unaware that a risk of such harm existed, the official's inaction, while not commendable, would not result in liability under the deliberate indifference standard. *Id.*

With regard to the first element of the *Sample* test, there can be little doubt that defendants had knowledge of Campbell's concerns and were aware that a failure to properly follow through on his inquiries could result in the infliction of unwarranted punishment.

Campbell is on less solid ground when it comes to the second element—where he must show that the defendants "either failed to act or took only ineffectual actions under the circumstances." Unlike the prison officials in *Haygood*, 769 F.2d at 1355, and *Alexander v. Perrill*, 916 F.2d 1392, 1398 (9th Cir.1990), defendants here did not stand "idly by after an inmate has raised the prospect that he is being unlawfully incarcerated and has provided documentary evidence in support of his claim." *Perrill*, 916 F.2d at 1398. Instead, as defendants point out, an investigation into plaintiff's claims took place soon after Campbell made his concerns known. (*See* Defendants' Exhibits 18–21). Indeed, each time plaintiff corresponded with the defendants about his problem, he was given copies of the sentence calculation worksheets that determined his incarceration time. (Defendants' Motion at 6). In *Lundblade* and *Moore*, evidence that the defendant prison officials followed up on a prisoner's complaints, even if they did so incompetently, was enough to negate any inference of deliberate indifference on their part. *See Lundblade*, 631 F.Supp. at 219; *Moore*, 986 F.2d at 687.

Nevertheless, as the *Sample* court found, a proper evaluation of defendants' responses to

the prisoners' complaints cannot take place in a vacuum. An examination of the scope of the officials' duties and his or her role in the everyday workings of the prison is essential to a proper determination of whether he or she acted with deliberate indifference. *Sample,* 885 F.2d at 1110. "[N]ot every official who is aware of a problem exhibits indifference by failing to resolve it." *Id.*

Here, no such inquiry is possible because the court has not been provided with any information about the individual defendants' duties with respect to these types of complaints in general or their specific roles in handling Campbell's in particular. Absent this information, the court cannot properly determine whether defendants may have simply acted incompetently (no liability) or might have knowingly failed to follow routine procedures which could have enabled them to detect the errors in the sentencing calculations (liability).

Another issue that may be taken into account in determining culpability is the magnitude of the miscalculation of plaintiff's sentence. Naturally, the mere fact that defendants erred does not show deliberate indifference. In rejecting just such an argument in *Lundblade,* the court explained that "the plaintiff's position was not so strong and the State's so untenable as to indicate 'deliberate indifference' to plaintiff's plight." *Lundblade,* 631 F.Supp. at 219. However, were these positions reversed—that is, were the state's position on the miscalculation untenable and the plaintiff's position strong—then the state's insistence on the validity of an obviously erroneous sentence calculation could allow one to infer that the prison official must have known of the error yet simply refused to calculate the sentence correctly.

Defendants here continue to assert that there was no error in their calculation of plaintiff's sentence, taking into account the time that the plaintiff lost for misconduct in prison. (Defendants' Motion for Summary Judgment at 6). This assertion seems to ignore the finding by the Illinois courts that an error of law had occurred in the sentence calculation. Specifically, the court, in its order to release the plaintiff, noted that under Illinois law a prisoner who is recommitted for an M.S.R. violation may serve, in addition to the unserved M.S.R. time, the remainder of the original sentence which had not been served due to the accumulation of good conduct credits; however, *not more than one year* of this unserved sentence may be imposed. Ill.Rev.Stat. ch. 38, para. 1003–3–9(a)(3)(i)(B) (emphasis added). In addition, it is the option of the Prisoner Review Board to impose this portion of the unserved sentence. *Id.* While the unserved portion of the original sentence is added to the unserved M.S.R. time, plaintiff's 1986 sentence for the unlawful use of a weapon was to run concurrently with these other sentences. *Campbell v. O'Leary, supra.* Since Campbell had approximately one year and seven months left on his M.S.R. when he violated it, the total amount of additional time he should have spent in prison (including the one year of good conduct time remaining on his original sentence) was two years and seven months.

Defendants have submitted numerous sentence calculation sheets showing that plaintiff lost approximately three years in good conduct credits. (Defendants' Exhibits 11–17). These sheets are mathematically correct, but this is beside the point. Defendants' calculations ignore the fact that the M.S.R. term and plaintiff's new sentence were to run concurrently and the fact that, under Illinois law, only one year at most of his previous, unserved sentence could be tacked on to his M.S.R. term. Remarkably, defendants fail to explain how or why these factors were not taken into account in the calculation of Campbell's sentence.

As a result of defendants' error, plaintiff was incarcerated for at least one year and possibly two years beyond his legal release date. The magnitude of this error cannot be overstated. Though not dispositive, the court must take into account the grossness of the error, and the ease with which it might have been detected, in determining whether a genuine issue of material fact exists on the question of deliberate indifference. Any renewed motion for summary judgment on defendants' behalf must be accompanied with an explanation of how an error of this magnitude could have occurred without any of the

defendants first becoming aware of, and subsequently ignoring, the problem.

### Conclusion

For the foregoing reasons, defendants' motions for summary judgment and to dismiss are denied. Plaintiff's Emergency Motion for an Extension of Time within which to serve Williams and Mills is granted until February 1, 1995. Plaintiff's Motion Requesting Issuance of Alias Summons is also granted. An alias summons in this matter is to be served on defendant Charles D. Williams at the following address: Charles D. Williams, Administrative Assistant, Robinson Correctional Center, P.O. Box 1000, Robinson, Illinois 62454. An alias summons in this matter is to be served on defendant Carol Mills at: Carol Mills, c/o Captain's Office, Stateville Correctional Center, P.O. Box 112, Joliet, IL 60434.